41 Cal.Rptr.3d 453 (2006)
138 Cal.App.4th 396
In re S.C., a Person Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
Kelly E., Defendant and Appellant.
No. C046784.
Court of Appeal, Third District.
April 7, 2006.
*458 Julie Lynn Wolff, Sacramento, for Defendant and Appellant.
Robert A. Ryan, Jr., County Counsel and Nanci A. Porter, Deputy County Counsel, for Plaintiff and Respondent.
SCOTLAND, P.J.
This is an appeal run amok. Not only does the appeal lack merit, the opening brief is a textbook example of what an appellate brief should not be.
In 76,235 words, rambling and ranting over the opening brief's 202 pages, appellant's counsel has managed to violate rules of court; ignore standards of review; misrepresent the record; base arguments on matters not in the record on appeal; fail to support arguments with any meaningful analysis and citation to authority; raise an issue that is not cognizable in an appeal by her client; unjustly challenge the integrity of the opposing party; make a contemptuous attack on the trial judge; and present claims of error in other ways that are contrary to common sense notions of effective appellate advocacy  for example, gratuitously and wrongly insulting her client's daughter (the minor in this case) by, among other things, stating the girl's developmental disabilities make her "more akin to broccoli" and belittling her complaints of sexual molestation by characterizing them as various "versions of her story, worthy of the Goosebumps series for children, with which to titillate her audience."
The Presiding Justice of this court deserves some blame because he granted the request by appellant's counsel, Julie Lynn Wolff, to file an opening brief exceeding the page limitation. Effective January 1, 2005, computer produced briefs in juvenile dependency appeals "must not exceed 25,500 words, including footnotes." (Cal. Rules of Court, rules 33(b)(1), 37.3; further rule references are to the California Rules of Court.) However, "[o]n application, the presiding justice may permit a longer brief for good cause." (Rule 33(b)(5).)
This court does not receive many requests for permission to file oversized briefs and, until now, it has been the practice of the Presiding Justice to accept, as credible, an appellate counsel's declaration under penalty of perjury that good cause exists to file a brief exceeding the word limitation. This has been so in part due to the perhaps naive view that appellate counsel will adhere to the duty of an attorney "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Bus. & Prof. Code, § 6068.) In addition, as a practical matter, in cases where the requested oversized brief is not submitted with the application, it would be difficult to assess the justification for exceeding the word limit without undertaking a review of the appellate record (an exercise that in most cases would require significant time and effort). Therefore, the Presiding Justice took appellant's counsel at her word and granted the application to file an oversized brief based on her representations that, in retrospect, appear to be the product of a passionate, yet unobjective, assessment of *459 what occurred in the juvenile court. Having reviewed the issues raised in the opening brief, and having examined the record, we now can say that nothing in this case required the filing of an oversized brief, and surely nothing required filing such an unprofessional and, in many respects, virulent brief of 76,235 words.
These comments are harsh but deservedly so. An opening brief like the one filed in this case has many consequences. For starters, it undoubtedly is costly to the client to file such a brief that is long on words but short on substance. And by attacking the integrity of individuals involved in this case, the brief in effect falsely tells the client that she has been the victim of a grave injustice perpetrated by a corrupt system. In reviewing the case, this court will be able to see through such hyperbole. But having heard the message from her counsel, the client might give up on the system and not take the steps necessary to be able to reunify with her daughter. There also is a cost to those who have been so personally attacked by the brief. Everyone who toils in the juvenile courts recognizes that dependency proceedings often involve difficult and contentious matters pertaining to family relationships, and that emotions can run high. However, this does not mean they all have developed such thick skins that unjustified personal attacks against them create no harm. Certainly, portraying appellant's developmentally disabled daughter in such a cruel way undermines, rather than advances, appellant's relationship with her daughter, when a positive relationship is necessary to achieve appellant's goal of reunification with her.
Another cost of the opening brief in this case is the need for respondent to file its own oversized brief, at undoubtedly great cost, to respond to every argument and show why, in the words of respondent's counsel, the opening brief "misstates the facts or includes facts not in the record, misstates the law, and/or fails to prove the claims made in [the opening brief]." In addition, the nature of the opening brief has caused this court to spend more time than it would have taken if the brief had not been so overwrought and over the top.
Lastly, the experience in dealing with appellant's opening brief in this case will have consequences for counsel in other cases who feel the need to request an exception to the word limitation. It should come as no surprise that the Presiding Justice will now take a more cautious approach in ruling on those requests. Counsel will be required to demonstrate with specificity why it is necessary for their briefs to exceed the word limit established by the California Rules of Court.

FACTS AND PROCEDURAL BACKGROUND
Rules 14(a)(2)(C) and 33(a) state that an appellant "must," in the opening brief, "[p]rovide a summary of the significant facts limited to matters in the record."
Here, appellant's counsel devotes only six and one-half pages of her 202-page brief to what she calls a "COMBINED STATEMENT OF FACTS AND HISTORY OF THE CASE." The statement is a chronological description of events that occurred in the juvenile court. Nowhere in it is there a summary of the significant facts contained in the record. The only reference to the substance of a witness's testimony is the following argumentative assertion by counsel about an expert called as a witness by the minor's attorney: "[T]he sole purpose minor's counsel could reasonably have in endeavoring to introduce this testimony in these proceedings, was to allow Dr. Miller to pontificate about CSAAS [the Child Sexual Abuse Accommodation *460 Syndrome], and to tell the Judge what to find true."
In the contention portions of the brief, appellant's counsel does recite some of the facts. However, they are only those facts that are favorable to her client, thus violating another established rule of appellate practice. An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant. (Foreman & Clark Corp. v. Fallon (1971) 3 Cal.3d 875, 881, 92 Cal.Rptr. 162, 479 P.2d 362.)
Without any assistance from appellant's counsel, we summarize the significant facts in the light most favorable to the judgment. (In re Angelia P. (1981) 28 Cal.3d 908, 924, 171 Cal.Rptr. 637, 623 P.2d 198.)
In December 2003, the Sacramento County Department of Health and Human Services filed a juvenile dependency petition on behalf of the 15-year-old minor, who has Down's syndrome with an IQ of 44 and functions at the level of a child six or seven years of age. The petition alleged that the minor had been sexually molested by her stepfather, including at least one act of sexual intercourse, and that appellant knew of the molestations but did not take any appropriate action to protect the minor. (Welf. & Inst.Code, § 300, subds. (b) & (d).) The social worker's report prepared for the hearing set forth the following information:
While at school, the minor had told staff that her stepfather watches pornographic movies and "makes noises" as he looks at pictures on the Internet of naked girls with their legs spread open, including pictures of a young girl who appeared to be the minor's age. While talking with a law enforcement officer who was summoned to question her, she told the officer that her stepfather had "`put his thing inside her thing and banged it against her'" and that she asked him to stop because it hurt her. When asked what "things" meant, she circled the penis of the male and the vaginal area of the female on a drawing of the human anatomy. According to the school principal, the minor had never exhibited sexualized behavior at the school, was "one of the highest functioning students," and was a "proper and well-behaved child" who "has never lied" at school.
The minor was transported to a medical center for examination, which was difficult to perform since the minor refused to cooperate. Consequently, the examination could neither confirm nor negate sexual molestation, although there was "no obvious trauma indicative of sexual abuse."
When interviewed by the social worker, the minor said that she had been sexually molested by her stepfather. She described one incident when she was taking a shower at home. Her stepfather came into the bathroom, "touched her private parts," and "put his private part inside her private part." When asked if she had said anything to her mother about the incident, the minor replied, "`Don't worry about it. It won't happen again.'"
Several days later, the social worker reinterviewed the minor, who again said that she had been sexually molested by the stepfather while her mother was not at home. However, when later interviewed by a member of the multidisciplinary interview committee (MDIC), the minor said that nobody had touched her inappropriately on a part of her body and that she had not told anyone there had been such a touching.
On January 13, 2004, after the MDIC interview, the minor told the social worker that the minor had not accused her stepfather of molesting her. In the minor's words, "`No that is not true. [He] has never touched my private parts. [He] does not do that.'"
*461 However, the minor's mother, appellant, acknowledged that the minor had told appellant about being molested by the stepfather. But appellant claimed that, on the following day, the minor said her accusation was not true. According to appellant, she then checked the minor "`down there'" and could see that "`no one had penetrated her.'" When asked by the social worker whether she had taken the minor for a medical evaluation, appellant said, "`No,'" explaining: "`Who are you going to believe? A retarded child, or me? I believe my daughter makes up stuff. One day, she told me she had sex with two boys at school.'" Appellant did not report this to the school because she believed that her daughter had fabricated the story.
In an addendum to the report for the hearing, the social worker summarized her conversation with the minor on January 28, 2004. When told that she was scheduled to visit with appellant, the minor said she did not want to see her stepfather because he was "`a very bad man.'" When asked what she meant, the minor stated: "`I won't lie, [my stepfather and mother] are lying . . ., trust me. [He] pushed me down to the floor and he touched me down here (pointing with her right index finger to her vaginal area). I tried to stop him but he won't stop either. I tried to stop him because it hurt, but he never listens to me. . . . [He] never listens to [my mother] either. [My mother] was mad at him because she knows that this has happened before. She was mad at him because she saw him, and they later started to fight, because [he] started cursing loud at [her]. I was so shocked. I was shocked that it happened before, too. [My mother] found [him] pushing his thing in my thing, plus [he] and [my mother] were bugging me and there's nothing I can do. . . . He is a bad man. He is a liar too.'" The minor again said her stepfather "looks at girls in the computer with no clothes either, and he makes noises." She also recounted that he looks at "girls movies in the TV on the tape."
At trial, the minor testified that her stepfather sexually molested her after she had started to take a shower. She tried to run away from him but, in her words, he "ran faster, caught me." He touched her breasts and vagina, and put his "thingie" into her "thingie" and started "banging." Afterwards, he told her this was "a secret." The minor also testified that her stepfather watched "bad movies" and looked at "his girlfriends" "within the computer too."
Clinical psychologist Jeffrey Miller gave expert testimony based on his interview of the minor. He opined she was moderately disabled but knew the difference between the truth and a lie and could identify gender and genitalia. During his examination of her, the minor told him (in a manner consistent with her testimony at trial and her statements to social workers and a law enforcement officer) that she had been sexually molested by her stepfather. Dr. Miller also provided testimony explaining why some minors who have reported being molested by a family member then recant those reports.
Two social workers and a police officer testified (consistent with the information contained in the social worker's report) that the minor complained of being sexually molested by her stepfather. The minor's foster parent also testified that the minor said her stepfather had sexually molested her.
Testifying (consistent with the information contained in the social worker's report) regarding her physical examination of the minor, a registered nurse stated she observed no trauma consistent with recent sexual penetration but was unable to rule out that such penetration had occurred.
*462 Claiming that the minor lied "quite frequently," the stepfather denied molesting her. He had, however, been convicted in 1991 for spousal abuse.
Appellant testified that the minor did not take showers when appellant was absent from the home and that appellant did not believe the minor had been sexually molested. Appellant explained that, even though she did not believe the minor, she physically examined her because that is "something [she] would do as a mother." Appellant acknowledged, however, that she had not performed such an examination after, according to appellant, the minor had reported being molested by two boys at school.
At the conclusion of the hearing, the juvenile court found the minor's testimony was credible and sustained the amended petition. In the court's words: "The child's demeanor during the testimony . . . and when describing the events relating to the sexual encounter . . . established to the Court that this was very credible and that she was honestly portraying what she experienced. Her body responded, her movements were different, her face reacted very profoundly. You could see her eyes  her eyes were widened when she would talk about the presence of becoming aware that the stepfather was approaching, and then in her describing running. All of that, you could tell that she was excited and affected and probably frightened by even the description of it. So I considered these rather powerful displays of emotion and support for the idea that in these areas . . . she was receiving and presenting honest information, credible information." Noting the minor "has given a fairly consistent description" of the event to "a significant number of persons," the court believed that her "inconsistencies are largely attributable to difficulties in communication and understanding her responses...." As for her recantations, the court found there was no "credible explanation" why she would have "made this story up"; and "just saying it never happened and I never told anybody it happened, is not one of those recantations that has some powerful ring of truth to it." In the court's view, other factors supporting the minor's credibility were that the evidence showed "[n]o plausible motive for the child to lie" and she did not report the molestation; rather, it "came out totally unexpectedly," when she was asked about things that had occurred at school. The court also found persuasive the fact that while in her foster home, the minor always locked the bathroom door, explaining she was afraid of her stepfather while talking a shower.
Noting that "on behalf of the mother it's asserted that virtually every one of those people [the social workers and others involved in the investigation] have a motive and are deceivers and are liars," the juvenile court was not persuaded by this claim. In fact, commenting on evidence of appellant's angry reaction when she returned home and found her husband with the minor, the court suggested this tended to give credence to the minor's complaint that she had just been sexually molested by her stepfather.
At the dispositional hearing, evidence showed that appellant had not engaged in services, and she and her husband continued to deny that the minor was molested. According to appellant, neither she, her husband, nor the minor needed any counseling. The court declared the minor a dependent, found that it would be detrimental to return her to appellant's custody at that time, and ordered appellant to participate in a reunification plan.
We now proceed to appellant's contentions, addressing them in the order in which they are raised by her counsel under *463 19 headings. We generally will begin each discussion with pertinent rules of court and standards of appellate review, or with observations concerning what is not professional appellate advocacy.

DISCUSSION

I
In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court. (In re S.B. (2004) 32 Cal.4th 1287, 1293, 13 Cal. Rptr.3d 786, 90 P.3d 746.) "The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law." (People v. Gibson (1994) 27 Cal.App.4th 1466, 1468, 33 Cal. Rptr.2d 217; accord, In re Dakota S. (2000) 85 Cal.App.4th 494, 501, 102 Cal. Rptr.2d 196.) Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources "to address purported errors which could have been rectified in the trial court had an objection been made." (People v. Gibson, supra, 27 Cal.App.4th at pp. 1468, 1469, 33 Cal.Rptr.2d 217.) In addition, it is inappropriate to allow any party to "trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (In re Urayna L. (1999) 75 Cal.App.4th 883, 886, 89 Cal.Rptr.2d 437.)
The party also must cite to the record showing exactly where the objection was made. (Rules 14(a)(1)(C), 33(a); Metzenbaum v. Metzenbaum (1950) 96 Cal.App.2d 197, 199, 214 P.2d 603.) When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. (Berger v. Godden (1985) 163 Cal.App.3d 1113, 1117, fn. 2, 210 Cal.Rptr. 109; Estate of Cleland (1953) 119 Cal.App.2d 18, 21, 258 P.2d 1097; Metzenbaum v. Metzenbaum, supra, 96 Cal.App.2d at p. 199, 214 P.2d 603; see also Duarte v. Chino Community Hospital (1999) 72 Cal.App.4th 849, 856, 85 Cal.Rptr.2d 521.) We can simply deem the contention to lack foundation and, thus, to be forfeited. (See Berger v. Godden, supra, 163 Cal.App.3d at p. 1117, 210 Cal.Rptr. 109; Atchley v. City of Fresno (1984) 151 Cal.App.3d 635, 647, 199, Cal.Rptr. 72.)
Even if the claim of error has been preserved by an objection in the trial court, appellant cannot prevail without establishing that she was prejudiced by the alleged error. (Cal. Const., art. VI, § 13; In re Celine R. (2003) 31 Cal.4th 45, 59-60, 1 Cal.Rptr.3d 432, 71 P.3d 787; Pool v. City of Oakland (1986) 42 Cal.3d 1051, 1069, 232 Cal.Rptr. 528, 728 P.2d 1163; San Diego Housing Com. v. Industrial Indemnity Co. (1998) 68 Cal.App.4th 526, 545, 80 Cal.Rptr.2d 393.)
Under heading 1 of her opening brief, appellant's counsel claims the Sacramento County Department of Health and Human Services (DHHS) improperly detained the minor for more than 48 hours before filing a juvenile dependency petition. (See Welf. & Inst.Code, § 313, subd. (a); further section references are to the Welfare and Institutions Code unless otherwise specified.) She even alleges that "[t]humbing their noses" at the law, and with "clear intent to obfuscate," DHHS workers engaged in "a blatant attempt to conceal this violation" by misrepresenting to the juvenile court when the minor was detained.
*464 Responding to this attack on its integrity, DHHS asserts that appellant's counsel misrepresents the facts and that, in any event, the claim of error was never raised in the juvenile court.
In her argument on appeal, appellant's counsel  who was her client's counsel at trial  makes no mention of ever tendering the objection in the juvenile court. Moreover, she does not even raise the issue of prejudice to her client. Consequently, we need not consider the matter any further. (See People v. Gurule (2002) 28 Cal.4th 557, 618, 123 Cal.Rptr.2d 345, 51 P.3d 224.)
Nevertheless, we point out that the dependency petition was not filed within 48 hours of the minor's detention because the day after the detention, appellant accepted DHHS's offer to provide the family with "Informal Supervision Services," rather than to file a petition. The agreement required appellant and the minor's stepfather "to attend individual counseling and have the stepfather move out of the home until the investigation with the Sacramento City Police Department was finalized regarding the sexual abuse allegation." One day later, however, appellant skipped a scheduled appointment to sign the case plan, and she refused to speak with the social worker without counsel being present. Appellant explained that her attorney had instructed her not to discuss the case with anyone. Consequently, DHHS then filed the dependency petition within 48 hours of learning that appellant had changed her mind and no longer agreed to informal supervision in lieu of court intervention via a dependency petition.
In complaining about a delay that was for appellant's benefit and which she caused, appellant's counsel is trifling with the courts.

II
The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. (Denham v. Superior Court (1970) 2 Cal.3d 557, 564, 86 Cal.Rptr. 65, 468 P.2d 193.) To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (City of Lincoln v. Barringer (2002) 102 Cal.App.4th 1211, 1239, fn. 16, 126 Cal.Rptr.2d 178; In re Marriage of Nichols (1994) 27 Cal.App.4th 661, 672-673, fn. 3, 33 Cal.Rptr.2d 13.) When a point is asserted without argument and authority for the proposition, "it is deemed to be without foundation and requires no discussion by the reviewing court." (Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal.Rptr. 72; accord, Berger v. Godden, supra, 163 Cal. App.3d at p. 1117, 210 Cal.Rptr. 109 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error"].) Hence, conclusory claims of error will fail.
In addition, appellant's brief "must" "[s]tate each point under a separate heading or subheading summarizing the point. . . ." (Rules 14(a)(1)(B), 33(a); Opdyk v. California Horse Racing Bd. (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4, 41 Cal.Rptr.2d 263.) This is not a mere technical requirement; it is "designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." (Landa v. Steinberg (1932) 126 Cal.App. 324, 325, 14 P.2d 532; accord, *465 Opdyk v. California Horse Racing Bd., supra, 34 Cal.App.4th at p. 1830-1831, fn. 4, 41 Cal.Rptr.2d 263.)
The contention under heading 2 of appellant's brief, entitled "THE COURT ERRED IN FAILING TO DISMISS THE PETITIONS, THEREBY VIOLATING MOTHER'S CONSTITUTIONAL RIGHTS," runs afoul of the above rules (1) by raising what appear to be five separate complaints that, because of the manner in which they are presented, are painful to read and difficult to understand, and (2) by failing to provide meaningful legal analysis and record citations for complaints raised under this heading.

A
The contention begins with a chronological account of events that occurred in the juvenile court with respect to the pleadings and discovery. Appellant's counsel devotes five pages of the contention to point out that she unsuccessfully objected to DHHS's amendments of the petition. This verbiage is meaningless clutter because she makes no effort to argue and cite authority for the proposition that the court erred in overruling her objections.

B
In passing, appellant's counsel uses a number of pages to vent, as she did in the juvenile court, about DHHS's "failure to produce discovery." But again it is mere surplusage because, in those pages of her brief, she raises no claim of discovery error.

C
Appellant's counsel consumes more pages of the contention by recounting her unsuccessful objections to amendments to the petition. Once again, what is missing is any coherent argument why the juvenile court should have ruled otherwise regarding the amendments. Thus, we need not say anything more about the matter. (Berger v. Godden, supra, 163 Cal.App.3d at p. 1117, 210 Cal.Rptr. 109; Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal.Rptr. 72.)

D
After quoting allegations in the original and amended petition, to which she objected in the juvenile court, appellant's counsel contends the court "erred in: 1.) finding the petitions legally sufficient, 2.) failing to strike/dismiss each petition, 3.) not dismissing the petition(s), and ordering [the minor] released to her mother's custody. . . ."
Symptomatic of most of her appellate arguments, this contention is heavy on words but light on analysis. Indeed, after over six pages of prefatory text, her "analysis" is but one short paragraph: "As mandated by section 332(f) [actually section 332, subdivision (f)], the entire juvenile dependency court process, begins with the allegation of facts, which, if true, are sufficient to support jurisdiction under one of the specifically enumerated subdivisions of section 300. As described in Alysha S. [sic; the correct title is In re Alysha S.] (1996) 51 Cal.App.4th 393, [58 Cal.Rptr.2d 494], and in accordance with the mandates of Section 332(f) [sic], mother's demurrers should have been sustained, as the legal sufficiency of the allegations cannot withstand scrutiny. (Id., at pp. 396-397, [58 Cal.Rptr.2d 494]; [In re] Fred J. [sic] (1979) [89] Cal.App.3d 168, 176 & fn. 4, [152 Cal.Rptr. 327];, [sic] [In re] Stephen W. [sic] (1990) 221 Cal.App.3d 629, [271 Cal.Rptr. 319][;] [In re] Troy D. [sic] (1989) 215 Cal.App.3d 889, [263 Cal.Rptr. 869])."
*466 This is no legal analysis at all. It is simply a conclusion, unsupported by any explanation of why the petition's allegations were not sufficient. Hence, appellant has forfeited the claim of error. (See Berger v. Godden, supra, 163 Cal.App.3d at p. 1117, 210 Cal.Rptr. 109; Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal.Rptr. 72.)
In any event, the contention is frivolous.
To state a cause of action, a dependency petition must contain the "code section and the subdivision under which the proceedings are instituted," as well as "an allegation pursuant to that section" (§ 332, subd. (c)) and a "concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." (§ 332, subd. (f).) "This does not require the pleader to regurgitate the contents of the social worker's report into a petition, it merely requires the pleading of essential facts establishing at least one ground of juvenile court jurisdiction." (In re Alysha S., supra, 51 Cal.App.4th at pp. 399-400, 58 Cal.Rptr.2d 494.)
Here, in both its initial and amended petitions, DHHS cited section 300, subdivision (b) "FAILURE TO PROTECT" and section 300, subdivision (d) "SEXUAL ABUSE" as the provisions under which the proceeding was instituted. The petitions further alleged that the minor had suffered serious physical harm "as a result of the willful or negligent failure of [appellant] to supervise or protect the [minor] adequately from the conduct of the custodian with whom the child has been left" (§ 300, subd. (b)); that the minor had been "sexually abused, or there [was] a substantial risk that the [minor] will be sexually abused," by a "member of the [minor's] household"; that appellant "knew or reasonably should have known that the [minor] was in danger of sexual abuse"; and that appellant "failed to protect the [minor] adequately from sexual abuse" (§ 300, subd. (d)). As the factual basis for these charges, the petitions alleged that the developmentally disabled minor was "sexually molested by her stepfather . . . on at least one occasion, including penile penetration" and appellant "knew, or should have known the [minor] is at risk of sexual molestation, as the [minor] told [appellant] of the sexual molestation by her stepfather and [appellant] failed to take appropriate action to protect the child."
As is readily apparent, these allegations unquestionably stated causes of action by setting forth specific factual allegations that support juvenile court jurisdiction under section 300, subdivisions (b) and (d). (See In re Alysha S., supra, 51 Cal. App.4th at pp. 399-400, 58 Cal.Rptr.2d 494; In re Jamie M. (1982) 134 Cal.App.3d 530, 544, 184 Cal.Rptr. 778.)

E
The last point made under heading 2 of the brief is a claim that the juvenile court erred in "not dismissing the petitions for legally unsupportable delay in conducting the jurisdictional (and the dispositional hearing for that matter), within the timelines mandated by law in juvenile dependency proceedings  with no `redetaining' or other sham, so as to render [appellant's] constitutional rights illusory."
This assertion is followed by a string of citations: "(CT 1-39; 78-83; 93; 181-188; RT 39:28-41:4; 62:1-69:12.) (Section 334; Rule 1447(d); Jeff M. [v. Superior Court, 56 Cal.App.4th 1238, 66 Cal.Rptr.2d 343], supra; Renee S.[v. Superior Court, 76 Cal. App.4th 187, 90 Cal.Rptr.2d 134,] supra; [In re] James Q. [81 Cal.App.4th 255, 96 *467 Cal.Rptr.2d 595], supra; Ingrid E. [v. Superior Court, 75 Cal.App.4th 751, 89 Cal. Rptr.2d 407], supra; [In re] Kelly D.,[82 Cal.App.4th 433, 98 Cal.Rptr.2d 188], supra; [In re] Daijah T., [83 Cal.App.4th 666, 99 Cal.Rptr.2d 904], supra; {In re} Malinda S., [51 Cal.3d 368, 795 P.2d 1244] supra; [In re] DeJohn B., [84 Cal.App.4th 100, 100 Cal.Rptr.2d 649], supra.)"
We are mystified as to how appellant's counsel believes the record citations support the claim of error. The cited pages of the appellate record deal with a variety of matters, some of which seem to have no bearing on the claim of error. For example, pages 78 through 83 of the clerk's transcript contain the forensic medical report of the minor's external genitalia.
Since appellant's counsel has not bothered to explain why these record citations are helpful to her client, we have no obligation to try to figure it out. (See County Nat. Bank etc. Co. v. Sheppard (1955) 136 Cal.App.2d 205, 223, 288 P.2d 880 [it is not the role of an appellate court to act as counsel for either party to an appeal]; see also Berger v. Godden, supra, 163 Cal. App.3d at p. 1117, 210 Cal.Rptr. 109; Atchley v. City of Fresno, supra, 151 Cal. App.3d at p. 647, 199 Cal.Rptr. 72.)
Equally unhelpful to us is the string of case citations that contains no references to the volumes of the Official California Appellate Reports where the cases can be found, and no jump cites to the pages of those cases where pertinent holdings purportedly exist. Of course, we can turn to the brief's table of authorities to find out where else in the brief these cases are cited, then thumb through it to ascertain what pages of the cases were cited by appellant's counsel. But accomplished appellate attorneys know they should not require us to do so.
Nevertheless, we undertook that task, only to discover the table of authorities prepared by appellant's counsel is inaccurate. For example, in addition to typographical errors, it reflects that the above quoted citation to "Jeff M., supra" (Jeff M. v. Superior Court (1997) 56 Cal.App.4th 1238, 66 Cal.Rptr.2d 343) is the first time that appellant cited the case in the body of the brief. Actually, it is cited on the prior page of the brief, but again only as "Jeff M., supra," thus providing no help as to what part of the opinion has relevance to this case.
More importantly, the problem with the string citations is that appellant's counsel makes no effort to explain how the authorities support her claim of error. Indeed, five of the cited cases appear to have no relevance at all because they dealt with inadequate notice of a hearing, which did not occur here (In re DeJohn B. (2000) 84 Cal.App.4th 100, 102, 100 Cal.Rptr.2d 649), or erroneous denial of contested hearings, which did not happen here (In re Daijah T. (2000) 83 Cal.App.4th 666, 668, 99 Cal. Rptr.2d 904; In re Kelly D. (2000) 82 Cal.App.4th 433, 434-435, 98 Cal.Rptr.2d 188; In re James Q. (2000) 81 Cal.App.4th 255, 258, 96 Cal.Rptr.2d 595; Ingrid E. v. Superior Court (1999) 75 Cal.App.4th 751, 753, 89 Cal.Rptr.2d 407.)
We reemphasize that it is not the role of an appellate court to carry appellate counsel's burden. (See Berger v. Godden, supra, 163 Cal.App.3d at p. 1117, 210 Cal. Rptr. 109; Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal. Rptr. 72; County Nat. Bank etc. Co. v. Sheppard, supra, 136 Cal.App.2d at p. 223, 288 P.2d 880.)
Aside from the inadequacies of the brief, the final flaw in this claim of error is that it lacks merit. Based upon her citations to section 334 and Rule 1447(d) and some of the text of her argument, it appears appellant's counsel is complaining *468 that the jurisdictional hearing did not commence within 15 judicial days after the date of the juvenile court's order detaining the minor. However, appellant's counsel ignores the fact that the minor has Indian heritage and that requirements of the Indian Child Welfare Act precluded the juvenile court from holding the jurisdictional hearing within this time period. (25 U.S.C. § 1912(a)) [no proceedings shall be held until at least 10 days "after receipt of notice" by the tribe] (hereafter § 1912(a).) As the record shows, the jurisdiction hearing began 10 days after the last tribe acknowledged receiving notice of the dependency proceedings. There was no error.

III
"[I]t is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law." (People v. Chong (1999) 76 Cal.App.4th 232, 243, 90 Cal.Rptr.2d 198.) Indeed, unwarranted personal attacks on the character or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct. (Id. at p. 245, 90 Cal.Rptr.2d 198; see also Stone v. Foster (1980) 106 Cal. App.3d 334, 355, 164 Cal.Rptr. 901.)
In a lengthy argument under heading 3 of her brief, appellant's counsel attacks the character and motives of a social worker in this case by asserting that "DHHS had discovery in its possession, which . . . was withheld, minimized, trivialized, and disregarded by DHHS." She even accuses the social worker of engaging in "concealment of the majority of evidence that did not support [DHHS's] position."
This scorn focuses on two items, the significance of which appellant's counsel exaggerates.
First, counsel criticizes DHHS for waiting until the detention hearing to show her a copy of the physical examination of the minor done in response to the minor's complaint of sexual molestation by her stepfather. Counsel characterizes this as "exculpatory evidence" that "provides zero evidence to support the alleged penile penetration...." Actually, the physical examination was inconclusive because the minor refused to cooperate. While there was "no obvious trauma indicative of sexual abuse," the examiner could neither confirm nor negate whether sexual intercourse had occurred. Thus, the examination was neither inculpatory nor exculpatory evidence.
Next, counsel protests that DHHS did not immediately turn over information regarding the MDIC interview of the minor which, according to appellant's counsel, shows a girl "who cannot distinguish between truth and fantasy" and who "recanted her statement regarding the molestation." We have watched the MDIC interview. The videotape shows a developmentally disabled girl who clearly understood the difference between being truthful and telling a lie; who was able to correctly answer questions about many things and demonstrated some cognitive thinking skills; and who became uncomfortable, reluctant, and even tearful when asked to answer questions about whether anyone had ever touched her inappropriately on a part of her body. It is true that she ultimately told the interviewer, "nobody touched me," then said she "didn't tell anybody" that she had been touched inappropriately. She also said she "probably" never talked to the police about this, and she even denied ever being alone with either her mother or her stepfather. Based upon her demeanor, obvious discomfort, and evasiveness whenever asked about the subject, it is readily apparent that the minor's statements during *469 the MDIC interview do not constitute a credible recantation of her earlier complaint that she was sexually molested by her stepfather. Thus, the interview is not as exculpatory as appellant's counsel suggests. And it certainly does not show a person "who cannot distinguish between truth and fantasy."
Appellant's counsel also asserts that the social worker's reports "intentionally excluded" exculpatory information. Once again, we find this to be an unsupportable exaggeration.
The bottom line is that the record does not support the claim by appellant's counsel that the juvenile court "erred in failing to supervise and enforce DHHS's duty to provide discovery. . . ." The court ordered DHHS to provide appellant with various materials and to meet with appellant's counsel regarding discovery. The record shows that DHHS complied. To the extent that counsel did not immediately receive the information, she has made no showing of prejudice. Hence, there was no reversible error.

IV
It is a fundamental rule of jurisprudence that courts do not issue advisory opinions. (People v. Slayton (2001) 26 Cal.4th 1076, 1084, 112 Cal.Rptr.2d 561, 32 P.3d 1073; City of Santa Monica v. Stewart (2005) 126 Cal.App.4th 43, 69-70, 24 Cal.Rptr.3d 72.) In order to assert a claim of error, appellant must demonstrate that she was aggrieved by the alleged error. (Benitez v. North Coast Women's Care Medical Group, Inc. (2003) 106 Cal.App.4th 978, 991, 131 Cal.Rptr.2d 364; In re Crystal J. (2001) 92 Cal.App.4th 186, 192, 111 Cal. Rptr.2d 646 ["Since appellant was not aggrieved by the denial of the motion, she lacks standing to appeal the ruling"].)
In two separate but largely redundant arguments under headings 4 and 5 of her brief, appellant's counsel rails against the juvenile court for its purported practice of "refus[ing] to conduct trials day to day, all day, even when specifically demanded,... conducting trials only in some portion of an afternoon left over after all other matters are handled, and claiming court congestion good cause to deny trials. . . ."
A fundamental problem with these arguments is that appellant's counsel violates rule 14(a)(2)(C) because her allegations regarding how dependency proceedings are conducted in the Sacramento County Superior Court are based upon matters not in the record of this appeal. Therefore, we need not address the claims since appellant's counsel makes no effort to show that this purported practice occurred in this case.

V
In claiming that the evidence is insufficient to support the trial court's findings, an appellant must "`demonstrate that there is no substantial evidence to support the challenged findings.' . . . [Citations.]" (Foreman & Clark Corp. v. Fallon, supra, 3 Cal.3d at p. 881, 92 Cal.Rptr. 162, 479 P.2d 362; italics omitted.) "A recitation of only [appellant's] evidence is not the `demonstration' contemplated under the above rule. [Citation.] Accordingly, if, as [appellant] here contend[s], `some particular issue of fact is not sustained, [appellant is] required to set forth in [her] brief all the material evidence on the point and not merely [her] own evidence. Unless this is done the error is deemed to be [forfeited].' (Italics added.) [Citations.]" (Ibid.; see also In re S.B., supra, 32 Cal.4th at p. 1293, fn. 2, 13 Cal.Rptr.3d 786, 90 P.3d 746.)
*470 Under heading 6 of her brief, appellant's counsel claims there is insufficient evidence to support the juvenile court's findings that resulted in removal of the minor from appellant's custody. But having violated rules 14(a)(2)(C) and 33(a) by not providing this court with "a summary of the significant facts limited to matters in the record," counsel then violates the substantial evidence rule by presenting, in her argument, only facts that lend support to her position. Thus, her claim of error is forfeited.
Even if appellant's counsel had correctly presented the claim of error, it loses on the merits.
In essence, her argument is a challenge to the objectivity and credibility of the social workers and the mental health professional whom DHHS presented as an expert witness. Relying upon the MDIC interview, which she has wrongly characterized as exculpatory (see part III, ante), and upon what she views as the more persuasive evidence presented by defense witnesses, counsel claims there was "no support" for the juvenile court's findings.
Appellant's counsel fails to grasp the fundamental rule that an appellate court does not reassess the credibility of witnesses or reweigh the evidence. (People v. McCleod (1997) 55 Cal.App.4th 1205, 1221, 64 Cal.Rptr.2d 545.) Conflicts in the evidence must be resolved in favor of the juvenile court's findings, and the evidence must be viewed in the light most favorable to the judgment, accepting every reasonable inference that the court could have drawn from the evidence. (In re Angelia P., supra, 28 Cal.3d at p. 924, 171 Cal. Rptr. 637, 623 P.2d 198; People v. Autry (1995) 37 Cal.App.4th 351, 358, 43 Cal. Rptr.2d 135.) Thus, we must uphold the juvenile court's factual findings if there is any substantial evidence, whether controverted or not, that supports the court's conclusion. (In re Jason L. (1990) 222 Cal.App.3d 1206, 1214, 272 Cal.Rptr. 316.)
Here, ample evidence supports a finding that the minor was sexually molested by her stepfather when she was left alone with him and that appellant, the minor's mother, knew the molestation happened yet failed to adequately protect the minor against the recurrence of such molestations. Appellant admitted that the minor told her about being molested by appellant's husband, and there was evidence suggesting that appellant came home as a molestation was occurring, or just after it had been completed, and found the minor and appellant's husband in a suspicious situation. Nevertheless, appellant refused to believe the minor, became angry at her, and permitted the molester to remain in the home where he could have continued unsupervised access to the minor. Thus, juvenile court jurisdiction was appropriate under both subdivisions (b) and (d) of section 300.
There also was clear and convincing evidence that no reasonable means of protecting the minor existed if she were to remain in her mother's home, where the stepfather continued to reside. Appellant had not been cooperative with DHHS, did not believe she needed any counseling, and opposed sexual abuse counseling for the minor. Simply stated, the juvenile court reasonably could find that home supervision was inadequate to safeguard the minor from the molesting stepfather due to appellant's failure to recognize the danger that he posed. In sum, substantial evidence supports the dispositional order.

VI
While exaggeration may not violate rules of court and standards of review, it is not an effective tool of appellate advocacy.
*471 Under heading 7 of her brief, appellant's counsel contends the juvenile court "continues to refuse to enter meaningful and enforceable visitation orders, or to ensure it's [sic] visitation orders are implemented by DHHS. . . ." The record refutes this exaggerated claim.
The juvenile court ordered DHHS to provide appellant with supervised visits with the minor.[1] Contrary to the suggestion of appellant's counsel, the order was not meaningless and unenforceable. (See In re Moriah T. (1994) 23 Cal.App.4th 1367, 1374-1377, 28 Cal.Rptr.2d 705.) DHHS's compliance with the order was subject to the court's supervision and control, and if DHHS was "abusing its responsibility in managing the details of visitation," appellant had the power to "bring that matter to the attention of the juvenile court. . . ." (Id. at p. 1377, 28 Cal.Rptr.2d 705.)
After appellant's counsel complained about the low number of visits, the juvenile court discussed the matter with counsel and the parties then stated: "The visitation order is to remain in full force and effect. [DHHS] is to comply with that order." Thereafter, DHHS recommended regular visits, and the case plan contained a provision for weekly visitation between appellant and the minor, commencing on January 15, 2004.
On January 28, 2004, appellant's counsel again raised the issue, telling the juvenile court that appellant had not had visitation for 20 days because one visit was cancelled by DHHS, and appellant was in court on the date of another scheduled visit. The court responded by ordering DHHS to provide appellant with additional visits to make up for those that were missed through no fault of appellant. Thereafter, the social worker advised the court that those visits had been held and that appellant had been visiting the minor on a weekly basis.
In sum, the record shows that the juvenile court did not abuse its discretion or commit any error pertaining to its duty to ensure that appellant was able to visit the minor.

VII
Counsel should never misrepresent the holding of an appellate decision. Not only would that be a violation of counsel's duty to the court (Bus. & Prof.Code, § 6068, subd. (d)), it will backfire because the court will discover the misrepresentation, particularly when it relates to a decision issued by that court.
Under heading 8 of her brief, appellant's counsel argues the juvenile court "erred by admitting and considering CSAAS." By this, she means the testimony of Dr. Jeffrey Miller, the clinical psychologist who had interviewed the minor and who, she says, presented evidence regarding the Child Sexual Abuse Accommodation Syndrome (CSAAS).
According to her, "CSAAS is inadmissible altogether in dependency hearings." Appellant's counsel cites "Sara M. [sic] (1987) 194 Cal.App.3d 585, 594, 239 Cal. Rptr. 605" for this proposition. However, *472 she misstates the holding of this court in that case.
In re Sara M., supra, 194 Cal.App.3d 585, 239 Cal.Rptr. 605 did not even deal with CSAAS; rather, that case involved the so-called "`child molest syndrome.'" (Id. at p. 587, 29 Cal.Rptr. 605.) Noting (1) the child molest syndrome was "not recognized by the American Psychological Association (APA) or any other professional organization" and it was "not included as a syndrome in the APA's Diagnostic and Statistical Manual" (id. at p. 589, 239 Cal.Rptr. 605), and (2) the experts described the syndrome "as being in the beginning stages of development and acceptance" (id. at p. 593, 239 Cal.Rptr. 605), this court held that testimony about the syndrome "was inadmissible due to lack of foundational proof that the child molest syndrome has been generally accepted in the scientific psychological community." (Id. at 594, 239 Cal.Rptr. 605.)
In contrast, it has long been held that in a judicial proceeding presenting the question whether a child has been sexually molested, CSAAS is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse. (See, e.g., People v. Wells (2004) 118 Cal.App.4th 179, 188, 12 Cal. Rptr.3d 762; People v. Housley (1992) 6 Cal.App.4th 947, 955, 8 Cal.Rptr.2d 431; People v. Archer (1989) 215 Cal.App.3d 197, 205, fn. 2, 263 Cal.Rptr. 486; People v. Bowker (1988) 203 Cal.App.3d 385, 392, 249 Cal.Rptr. 886.)
Here, the juvenile court explicitly stated it would not permit Dr. Miller to proffer an opinion as to whether the minor had been sexually molested. The court simply allowed him to present an expert opinion regarding why some children who have been sexually abused "will at some point recant or deny the abuse after they have made their initial disclosure." This evidence was relevant and admissible because, at one point, the minor had briefly recanted her complaint of being sexually abused by her stepfather.
In another attack on Dr. Miller's testimony, appellant's counsel claims, under heading 9 of her brief, that the juvenile court "erred in admitting and considering dissociation (multiple personality disorder), absent the required supporting diagnosis." However, her argument is based in part on testimony that was stricken by the court! As DHHS correctly points out, Dr. Miller did not diagnose the minor as having a multiple personality disorder. He simply opined that the minor's expressed desire to be part of another family might be a dissociative reaction, a defense mechanism to cope with some event in her life. It is this testimony, not any medical diagnosis of dissociation, to which the juvenile court later referred in explaining its finding that the minor was competent to testify as a witness. There was no error.
We also reject appellant counsel's argument, under heading 10 of her brief, that Dr. Miller should not have been allowed to testify because of what she says was "the inappropriateness of minor's counsel's failure to properly disclose the intended testimony of Dr. Miller." Counsel provides no analytical discussion and cites no legal authority for her claim of error. For this reason, we deem it to lack foundation. In any event, our examination of the record shows that the juvenile court allowed appellant's counsel ample time to prepare for her examination of Dr. Miller.
Lastly, expressing frustration that Dr. Miller repeatedly requested her to clarify "vague" questions that she asked during cross-examination, appellant's counsel attempts to belittle his testimony and suggests it constituted nothing more than *473 "unsupported conclusions," upon which the juvenile court should not have relied. We disagree. The record shows that Dr. Miller is a recognized expert in the evaluation of children with Down's syndrome. The evidence of Dr. Miller's qualifications justified the juvenile court's reliance on his testimony as an expert. Appellant counsel's extremely unfair characterization of Dr. Miller's testimony is not supported by the record.

VIII
It is not productive to devote a separate heading to a comment on evidence regarding which no claim of error is made.
In the five sentences under heading 11 of her brief, appellant's counsel notes that (1) her client testified the minor has referred to her biological father as her stepfather, and (2) Dr. Miller testified that at one point during his examination of her, the minor referred to her stepfather by her father's name.
What is conspicuously absent is any argument or analysis of any kind as to why this supports any claim of error. Thus, we move on. (Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal. Rptr. 72.)

IX
"It is the duty of an attorney" to "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." (Bus. & Prof.Code, § 6068, subd. (d).)
Under heading 12 of her brief, appellant's counsel presents lengthy criticism of the interviewing techniques used by various persons who questioned the minor. In her view, everyone who spoke with the minor during the investigation stage "violated repeatedly" the "interview techniques accepted by the relevant scientific community" for questioning a child who has complained of sexual molestation, and instead used "suggestive" techniques and leading questions. This assertion is followed by over ten pages of snippets from the clerk's transcript and reporter's transcript.
The only "authority" that appellant's counsel cites to support her conclusory assertion is a two-page quotation that she attributes to literature authored by four experts in the field and that she says is taken from specified pages of the reporter's transcript. We have examined those pages, only to discover that the quoted words do not exist on the cited pages of the reporter's transcript. Those pages cover some of the cross-examination of Dr. Miller by appellant's then-trial counsel. It appears the quotation purportedly taken from treatises is actually a recasting of some of her cross-examination questions. In presenting this as purported evidence of scientific opinion on proper interview techniques, she has attempted to misled this court.
Aside from counsel's apparent attempt to mislead this court, the only discernable claim of legal error set forth under heading 12 of her brief is the assertion that "a review of the entire record makes clear, it would be impossible to find any of the allegations of the petition . . . supported by substantial evidence." Not so. Our examination of the record and viewing of the videotape of the MDIC interview convince us (1) the claim that improper interview techniques were used is exaggerated, and (2) there is substantial evidence that the minor was sexually molested by her stepfather and that appellant knew about the molestation but failed to protect the minor.

*474 X
"[W]e note with dismay the ever growing number of cases in which most of the trappings of civility . . . are lacking." (Townsend v. Superior Court (1998) 61 Cal.App.4th 1431, 1438, 72 Cal.Rptr.2d 333.) Here, appellant's counsel has taken that unfortunate practice to its extreme. As we will explain, there is no excuse for the uncivil, unprofessional, and offensive advocacy employed by appellant's counsel, which is all the more unconscionable because it falsely attributes offensive language to others.
Some of the most egregious aspects of the brief filed by appellant's counsel are under heading 13, entitled: "[The minor] was not competent to testify at trial, was not competent at the time she allegedly made out of court statements, therefore, the court erred in admitting such evidence."
Before discussing the unprofessionalism of this part of her brief, we pause to point out that appellant's counsel has not shown that she raised an objection in the juvenile court to the minor's testimony on the ground of incompetence. (Evid.Code, § 701.) "[T]o preserve for appeal a claim that a witness lacked testimonial competence, a party must object on this ground in the trial court." (People v. Cudjo (1993) 6 Cal.4th 585, 622, 25 Cal. Rptr.2d 390, 863 P.2d 635; People v. Aleshire (1949) 90 Cal.App.2d 506, 509, 203 P.2d 569.) By simply claiming, but not showing by citation to the record, that she objected in the juvenile court that the minor was not competent to testify, appellant's counsel has forfeited the claim of error. Nevertheless, we discuss it because it is so irresponsible.
Spread out over 81 pages is a contemptuous attack by appellant's counsel on the mental competence of appellant's daughter. The attack is stunning in terms of its verbosity, needless repetition, use of offensive descriptions of the developmentally disabled minor, and misrepresentations of the record.
For example, appellant's counsel sets forth a lengthy narration that purportedly quotes the juvenile court's reasons for finding the minor competent to testify. She attributes to the judge a statement that the minor, "with an IQ of 44" and "test results . . . in the moderately retarded range in all areas, is more akin to broccoli, than to a single celled amoeba." However, our examination of the record reveals that the judge never made such a statement. Rather, those words are the gratuitous, offensive commentary of appellant's counsel. Indeed, earlier in her brief, counsel flippantly "submits nothing is below [the minor's test score] percentile, except broccoli."
Another offensive statement, which appellant's counsel wrongly attributed to DHHS's expert witness, was counsel's assertion in the juvenile court that "Dr. Miller think[s] [the minor is] pretty much a tree trunk at a 44 IQ." Again, this is shameful editorializing by appellant's counsel.
In another part of her brief, appellant's counsel belittles the minor's testimony about being sexually molested. Counsel accuses the minor of having "several more versions of her story, worthy of the Goosebumps series for children, with which to titillate her audience."
Appellant's counsel also describes the minor's testimony, and her responses during the MDIC interview, as "jibber jabber," "meaningless mumble," "mumbles, in a world of her own," and "little more than word salad."
Not only are all the words used by appellant's counsel offensive, they are inaccurate. *475 For example, our viewing of the videotape of the MDIC interview made it readily apparent to us that the minor, while developmentally disabled, demonstrated some reasoning skills; knew the difference between telling a truth and a lie; was generally responsive to questions, except when she showed obvious discomfort in responding to questions about whether anyone had ever touched her inappropriately on her body; and, for the most part, was easy to understand. Although some responses by the minor showed her confusion on certain subjects, they did not demonstrate that she is incompetent to testify in court. They simply bore upon her credibility. (In re Katrina L. (1988) 200 Cal.App.3d 1288, 1299, 247 Cal.Rptr. 754.)[2]
Completely devoid of merit is appellant counsel's claim, tendered under heading 14 of her brief, that the minor's trial attorney conceded the minor's incompetence as a witness. Before the minor testified, her attorney told the judge that the minor is developmentally disabled and, thus, is "easily distracted and easily intimidated." According to her attorney, the minor had displayed signs of stress after attending earlier proceedings. Later, after the judge remarked that one inquiry during cross-examination was "a tricky question," the attorney observed that cross-examination by appellant's counsel was "clearly frustrating [the minor] and clearly affecting the testimony." By no stretch of the imagination did the attorney's comments constitute a concession that the minor was incompetent to testify.
In sum, our viewing of the MDIC interview and our review of the minor's testimony at trial discloses there was substantial evidence supporting the juvenile court's finding that the minor was competent to testify. Thus, we reject appellant counsel's characterization of the proceedings as a "mockery of justice."

XI
We reiterate that appellant cannot prevail on a claim of error if she makes no effort to establish that she was prejudiced by the alleged error. (Cal. Const., art. VI, § 13; see Atchley v. City of Fresno, supra, 151 Cal.App.3d at p. 647, 199 Cal. Rptr. 72.)
Claiming DHHS has sent the "message" that it "will do whatever it wants, whenever it wants, with no regard for the law," appellant's counsel argues, under heading 15 of her brief, that "County Counsel and minor's counsel . . . repeatedly misrepresented the law to the [juvenile] court, and supported the social worker in showing disdain for the court's authority and orders."
We need not set forth the specific claims of misconduct, or decide whether they are supported by the record. This is so because (1) there has been no showing that appellant's counsel raised the claims in the juvenile court, and (2) in any event, she makes no showing that her client suffered prejudice from the alleged misconduct.

XII
Disparaging the trial judge is a tactic that is not taken lightly by a reviewing court. Counsel better make sure he or she has the facts right before venturing *476 into such dangerous territory because it is contemptuous for an attorney to make the unsupported assertion that the judge was "act[ing] out of bias toward a party." (In re White (2004) 121 Cal.App.4th 1453, 1478, 18 Cal.Rptr.3d 444.)
Under heading 16 of her brief, appellant's counsel argues the trial judge "was not impartial, per se requiring a reversal." Her complaint focuses primarily on questions the court asked the minor during direct examination by the minor's attorney. According to appellant's counsel, the judge "pressed [the minor], repeatedly, to say the words the judge was giving her, in order to endeavor to prove the government's case." Appellant's counsel also criticizes questions the court asked the social worker during her testimony. "[I]n each instance," appellant's counsel asserts, the judge's "`questioning appears to have been motivated by a desire to assist the prosecution's case.' [Citation.]" She even claims the judge admitted that he was biased. As we will explain, these outrageous claims are meritless.
It is well within the province of the judge to ask a witness questions, particularly when the judge is the fact finder. (Evid.Code, § 775.) We have carefully reviewed the questions that were asked by the judge in this case. The questions he posed to the minor can be put into five categories: (1) conducting voir dire regarding the minor's competency to testify; (2) specifying, for the record, the areas of the minor's body to which she pointed in response to questioning by a party's attorney, and the size of a room in her home about which the minor testified; (3) making sure the minor understood questions asked by a party's attorney; (4) requesting the minor to repeat or explain her testimony that the court obviously was having difficulty hearing; and (5) obtaining additional information from the minor in an apparent effort to determine where and how certain acts about which she testified took place. On only two occasions did the judge ask the minor a series of questions, none of which were anything like how appellant's counsel has described them.
Simply stated, no reasonable attorney could interpret the judge's questions of the minor as a biased effort to help DHHS prove its case. Rather, they represent a conscientious effort by the judge to understand the testimony of the developmentally disabled minor. So it was with the relatively few, short questions that the judge posed to the social worker with the obvious goal of understanding her testimony.
Appellant counsel's claim that the judge admitted he was biased is sheer folly. In explaining why he found the minor was competent to testify and was credible when she stated her stepfather molested her and appellant had knowledge of the molestation, the judge noted: "[T]he questioning was difficult and things were hard to understand and we repeated things and the Court became very actively involved, I trust not excessively, but in part because I needed to satisfy myself that I could understand what [the minor] was saying. And so [the minor's attorney] and I on occasion would repeat the child's answer and get her to indicate that's what she said. So much of that related to the inability to be sure one could understand what her answers were. So that whole process is one in which I was very active, and I wasn't just an impartial person sitting on the sidelines evaluating the child."
Taken in context, the last sentence of the above statement by the judge was not an admission of bias. It simply was an observation that because of the minor's developmental disability, the judge was unable to just sit back to hear and observe her testimony; instead, he was required to get involved in the questioning in order to *477 ensure that he understood the minor's answers.
Indeed, our review of the record reveals that the judge had incredible patience and equanimity throughout the lengthy proceeding that often was contentious due to the aggressive nature of counsel's advocacy.
Lacking any foundation, appellant counsel's accusation that the trial judge was biased in favor of DHHS and interceded in an effort to help DHHS prove its case appears to constitute contempt of court. (In re White, supra, 121 Cal.App.4th at pp. 1477-1478, 18 Cal.Rptr.3d 444.) Rather than institute contempt proceedings, we have decided to leave it to the State Bar of California to address the issue.

XIII
Redundancy is seldom good in an appellate brief, but clarity is essential.
Under headings 17 and 18 of her brief, appellant's counsel sets forth what seems to be a rambling stream of consciousness of repetitious venting about various aspects of this case.
She begins with over two pages of quotations from authorities addressing the right, guaranteed by the Sixth Amendment to the United States Constitution, to confront and cross-examine witnesses. However, that right applies to criminal proceedings, not to juvenile dependency actions. (In re Malinda S. (1990) 51 Cal.3d 368, 383, fn. 16, 272 Cal.Rptr. 787, 795 P.2d 1244; In re Angel W. (2001) 93 Cal.App.4th 1074, 1080, 113 Cal.Rptr.2d 659.) It is the Due Process Clause of the Constitution that guarantees a parent the right to confront and cross-examine witnesses in a dependency proceeding. (In re Malinda S., supra, 51 Cal.3d at p. 383, fn. 16, 272 Cal.Rptr. 787, 795 P.2d 1244.)
Appellant's counsel goes on by pointing out that the juvenile court granted the motion of the minor's attorney to allow the minor to testify and be cross-examined outside the immediate presence of her mother, appellant. Curiously, she does not make a specific claim that the court erred in doing so. At most, she complains the motion was not supported by "evidence from psychologists" stating that the minor would suffer "psychological damage" if required to testify in her mother's immediate presence or that granting the motion was necessary to ensure truthfulness by the minor.
The argument then evolves into a redundant allegation that DHHS and the social worker improperly concealed discovery (a claim that we already have rejected in part III, ante).
At this point, the argument under heading 17 shifts to, and ends with, over a page of general observations about a parent's right of cross-examination in a dependency action. Once again, no specific claim of error is made.
Under heading 18, appellant's counsel begins with five pages of quotations from authorities addressing the right of confrontation in criminal cases. She then suggests that DHHS's introduction into evidence of the social worker's report containing out-of-court statements of witnesses violated the holding of the United States Supreme Court in Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (hereafter Crawford).
After briefly digressing to say, once again, that there was no substantial evidence to support the juvenile court's finding that the minor was competent to testify (a claim that we already have rejected in part X, ante), appellant's counsel returns to the Crawford decision and argues that even the testimony of the minor in *478 this case "cannot survive" in light of the Supreme Court's holding in Crawford.
The argument ends with a paragraph asserting that "[t]his court can not [sic] speculate whether having her mother present during [the minor's] examination in the jurisdictional portion of the proceedings would not have made a difference."
Since appellant should not be penalized by her counsel's failure to articulate a coherent argument, we have extracted from counsel's stream of consciousness what appear to be efforts to raise two issues: (1) there is insufficient evidence to support the juvenile court's finding that it was necessary to allow the minor to testify and be cross-examined by counsel outside of appellant's immediate presence; and (2) the social worker's report should not have been introduced into evidence because it denied to appellant the right to confrontation and cross-examination regarding the information contained in the report.

A
Subdivision (b) of section 350 provides that in a dependency proceeding, the "testimony of a minor may be taken in chambers and outside the presence of the minor's parent or parents, if the minor's parent or parents are represented by counsel, the counsel is present and any of the following circumstances exist: [¶] (1) The court determines that testimony in chambers is necessary to ensure truthful testimony. [¶] (2) The minor is likely to be intimidated by a formal courtroom setting. [¶] (3) The minor is afraid to testify in front of his or her parent or parents. [¶] After testimony in chambers, the parent or parents of the minor may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents."
Here, the minor's attorney asked the judge to "take [the minor's] testimony in chambers outside of the presence of her mother [appellant]." The minor's attorney represented to the judge that such an order was necessary because as a developmentally disabled child, the minor is "easily distracted and easily intimidated"; after attending earlier proceedings, the minor "was displaying signs of distress"; and the minor had said she was afraid to testify in front of appellant.
Based on these representations, and on evidence in the social worker's report stating appellant became angry at the minor when she told others about the sexual molestation, the judge found there was "a very great likelihood that the [minor] will be intimidated and fearful of offending [appellant] or disturbing [appellant] and causing more trouble for which she has been sternly chastised before." Hence, the judge granted the motion.
Appellant's counsel now suggests that the representations of the minor's counsel, to which there was no objection in the juvenile court, were insufficient to satisfy the statutory requirements of section 350, subdivision (b) that would allow the minor to testify outside of appellant's immediate presence. It appears that, in her view, expert evidence from a psychologist is necessary before the court can grant such an order. Since she did not tender this issue in the juvenile court, she is precluded from raising it now. (In re S.B., supra, 32 Cal.4th at p. 1293, 13 Cal.Rptr.3d 786, 90 P.3d 746.) In any event, counsel has provided no legal authority to support her view, and we have found none.
We construe the representations made by the minor's counsel as offers of proof that were not objected to by appellant's counsel. Along with information in the social worker's report upon which the court relied, they were sufficient to satisfy *479 the requirements of section 350, subdivision (b).

B
Also without merit is the suggestion of appellant's counsel that DHHS's introduction into evidence of the social worker's report containing out-of-court statements of witnesses, and even the minor's testimony, violated the holding of the United States Supreme Court in Crawford, supra, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 concerning the right to confrontation in a criminal proceeding.
"Crawford has no application here because the Sixth Amendment right of a criminal defendant to confrontation under the United States Constitution does not extend to parents in state [juvenile] dependency proceedings." (In re April C. (2005) 131 Cal.App.4th 599, 602, 610-612, 31 Cal. Rptr.3d 804.)
In any event, appellant's counsel misunderstands the holding in Crawford, a case that involved the testimonial statement of a witness who told law enforcement officers about a stabbing committed by the defendant. The Supreme Court held that the Sixth Amendment bars the introduction of such a statement into evidence, unless the declarant is subject to, or has been subjected to, cross-examination regarding the statement. (Crawford, supra, 541 U.S. at pp. 68-69, 124 S.Ct. at p. 1374, 158 L.Ed.2d at p. 203.) Here, appellant had the opportunity, through her counsel, to cross-examine the minor and other witnesses about their out-of-court statements that were included in the social worker's report. Hence, there was no denial of her due process right of confrontation. (In re Malinda S., supra, 51 Cal.3d at pp. 382-385, 272 Cal.Rptr. 787, 795 P.2d 1244.)

XIV
The final claim of error raised by appellant's counsel is frivolous.
The minor has Indian heritage. Consequently, the juvenile court was required to comply with the notice provisions of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), and the hearing was delayed because the notice period had not expired as to one of the tribes at issue in this case.
Under heading 19 of her brief, appellant's counsel contends the juvenile court erred in refusing to commence the hearing until at least 10 days after the Indian tribe received notice of the proceedings. According to her, the delay should be no more than 10 days after such notice was sent to the Indian tribe.
She is wrong. Section 1912(a) of ICWA states "[n]o [dependency] proceeding shall be held until at least ten days after receipt of notice by the . . . tribe. . . ." (Italics added.)
Appellant's counsel cites In re L.B. (2003) 110 Cal.App.4th 1420, 3 Cal.Rptr.3d 16 to support her position. However, that decision did not interpret section 1912 of ICWA; rather, it addressed what the appellate record must contain in order to establish compliance with notice provisions of ICWA. (Id. at pp. 1424-1427, 3 Cal. Rptr.3d 16.) There was no error.

DISPOSITION
The orders of the juvenile court are affirmed. Upon issuance of the remittitur, the Clerk/Administrator of this court is directed to send a copy of this opinion to the State Bar of California.
We concur: NICHOLSON and ROBIE, JJ.
NOTES
[1] The orders stated: "The mother shall have supervised visitation with the child as frequent as is consistent with the well-being of the child. [DHHS] shall determine the time, place, and manner of visitation, including the frequency of visits, length of visits, and by whom they are supervised." "[DHHS] may consider the child's desires in its administration of the visits, but the child shall not be given the option to consent to or refuse future visits." "The Department's discretion shall extend to determining if and when to begin unsupervised overnight and weekend visits." The court also ordered that the minor shall not have any contact with her stepfather.
[2] As purported evidence of incompetence, appellant's counsel places great emphasis on the minor's proclivity to respond "probably not," rather than "no," to some questions. She faults the trial judge for interpreting "probably not" as meaning "no." This argument lacks merit. It appeared to us, as we watched the videotape of the MDIC interview of the developmentally disabled minor, that in her manner of speaking, "probably not" did indeed mean "no."