Filed 7/10/15  P. v. Locke CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075353 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08106) |
| v. | |
| MICHAEL LOCKE, | |
| Defendant and Appellant. | |

Defendant Michael Locke was charged with seven counts of sexual penetration of a child 10 years of age or younger.  (Pen. Code, § 288.7, subd. (b).)[1]  The victim in counts one through four was F. Doe (F.), and the victim in counts five through seven was A. Doe (A.).  A jury convicted defendant of counts one, two, five, and six, but acquitted him of counts three, four, and seven.  Defendant was sentenced to state prison for 60 years to life, composed of consecutive terms of 15 years to life for each conviction.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court prejudicially erred by (1) admitting evidence of child sexual abuse accommodation syndrome (hereafter CSAAS), and (2) excluding evidence of acts of theft by A. and F. We reject the contentions and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution's Case*

Defendant and Sarah F. married in September 2005. At that time Sarah had two four-year-old twins, A. and F., as well as a son who was five and a half years old. They resided as a family in a home in Sacramento. In October 2006 defendant and Sarah also had a son, the children's half brother. A. and F., who were 12 years old at the time of trial, each testified that defendant had been molesting them for several years prior to their becoming 10 years old. The molestations occurred in the same manner—at night, defendant would come into the bedroom where the girls were sleeping in bunks beds, and would kneel down beside the bed, spread the legs of whichever girl was lying in the bottom bunk and rub and put his finger in that girl's vagina. A. thought the molestations of her occurred between 20 and 40 times, and F. estimated the ones to her happened 10 to 30 times. The molestations stopped when the girls were about 10 years old and defendant moved out of the home.

Janice F., the mother of Sarah F., moved into the family residence in March 2011. Defendant moved out of the residence permanently on July 3, 2011. On July 28, 2011, Janice was alone with the two girls and could tell they were upset but she did not know why. When A. later went out on the front porch, Janice followed and asked her what was wrong. A. replied that defendant had told her that when he got an apartment he was going to have the girls stay overnight separately, and A. did not want to do so. Upon further inquiry, A. told Janice about defendant's touching her and F. "down there."

2

F. came onto the porch and was upset with A. for having told of the molestations because F. "was scared."

When Sarah got home Janice told her about the molestations and Janice, in turn, spoke to the girls who repeated what defendant had done to them. The girls said they had not told of the molestation "because they didn't want to lose their dad [(defendant)]." Sarah took the girls to a hospital where the girls told police officers of the molestations.

On August 1, 2011, the girls were taken to a hospital for forensic examinations, the results of which were normal, meaning no physical injuries were detected. However, the absence of physical injury is not necessarily inconsistent with abuse because injuries in the genital area heal within two to three days, and the examinations were well after the girls last reported the molestations. On August 22, 2011, the girls were interviewed separately at the Special Assault Forensic and Evaluation Center by a specialist in child abuse, and each girl described her molestations by defendant. The interviews were video recorded and played for the jury.

Anthony Urquiza, Ph.D., an expert in CSAAS evidence, testified that CSAAS consists of five components—secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction and recantation. The prosecutor informed Dr. Urquiza that he wanted to focus on three areas—secrecy, helplessness, and delayed disclosure.

Secrecy deals with the misconception that a sexually abused child will tell of the abuse right away, which is not the case. The reasons the child may keep the abuse secret could be because the abuser may have recruited the child into liking him or her and the child does not want to ruin that relationship. Additionally, it is usually the case that the abuser is bigger, older, and stronger than the child, and the abuser can threaten the child with physical injury.

3

Helplessness deals with the misconception that if a child is about to be sexually abused, the child will attempt to escape the abuse by running, fighting, or calling out for help. But again, because of the disparity in size and strength, or the abuser's authority over the child, the child does not report the abuse because he or she feels there is nothing they can do about it, i.e., they are helpless.

Delayed and unconvincing disclosure by the child of the abuse deals with the misconception that because the child did not tell of the abuse right away and/or gave an unconvincing report of the abuse, the abuse may not have occurred. While the failure to disclose is connected with the reasons for secrecy, the child's delay in reporting the abuse may be related to the child beginning to feel safe in making the disclosure. Most children delay in making the disclosure, but eventually do so when they feel safe due to their gaining in physical size and maturity, their obtaining information that enables them to feel more confident in making the disclosure, or the abuser loses access to them by moving out of their residence. Unconvincing disclosure occurs when, because of shame, humiliation, and embarrassment the child feels in admitting the abuse, the child discloses the abuse parts at a time.

Aside from the name of defendant, Dr. Urquiza knew nothing of the facts of the case and had no opinion on whether A. and F. had been molested.[2]

_____

[2] The court gave the jury the following cautionary instruction regarding CSAAS evidence: "You have heard testimony from Anthony Urquiza regarding child sexual abuse accommodation syndrome. [¶] Anthony Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [F.'s] and [A.'s] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." (CALCRIM No. 1193.)

*Defense Case*

The defense was that Sarah was embittered with defendant's having extramarital affairs and that A.'s and F.'s accusations and testimony were at Sarah's behest. To this end the defense provided witnesses challenging Sarah's and the girls' credibility.

Lynn Patten, the Executive Director of Child Action from whom Sarah was receiving money, testified Sarah had failed to report defendant's wages as part of the family income and was denied subsequent benefits. Defendant's mother testified to Sarah's bragging about illegally obtaining money from Child Action. Defendant's grandfather testified that in 2010, while celebrating Christmas with defendant, Sarah, and their children, Sarah told him that she was not going to forgive defendant for his extramarital affairs and that she would get even.

Defendant testified, denying that he ever sexually touched any of the children. Defendant claimed that Sarah had "anger issues" and would "do or say anything to benefit her." Defendant testified that after he moved out Sarah called him and said she had found letters written by A. and F. stating that defendant had molested them, which he denied. Defendant claimed he was unaware that this call was a pretext call initiated by an officer investigating the case when he denied the accusations. Defendant told Sarah to either take the letters to the authorities or, if she did not believe the accusations were true, she should tear up the letters. Later that day, defendant received a call from the investigating officer asking him to come to the police station. Defendant went to the station the following day, talked with the officer and, at the officer's request, gave her his cell phone so she could copy its content.

## DISCUSSION

### I. CSAAS Evidence

Defendant contends that, for various reasons which we address below, the trial court prejudicially erred when, over his objection, it permitted Dr. Urquiza, a

5

psychologist and expert in CSAAS evidence, to testify regarding why a delayed disclosure of sexual abuse by a child is not necessarily inconsistent with the child's having been abused. We reject the contentions.

## A. *Background*

Prior to trial, the People filed a written motion requesting to have Dr. Urquiza, an expert in CSAAS evidence, testify to why a child's delayed and unconvincing disclosure of being sexually abused is not necessarily inconsistent with the child's actually having been abused, which is contrary to a popular "myth" or "misconception" that such conduct is inconsistent with abuse.

At the hearing on the motion, defendant's only objection to the admission of the CSAAS evidence was that because it was based on the "premise" that the child has actually been abused, the evidence, coupled with its being presented by a "credentialed doctor [or] psychologist," makes it "likely to lead to confusion of the jury and have them believe that . . . these girls actually are abused victims that this syndrome applies to," and, therefore, the evidence should be excluded under Evidence Code section 352.[3] After the court overruled the objection, it was agreed that the prosecutor would limit his questioning of Dr. Urquiza to "helplessness and delayed and unconvincing disclosure."

## B. *Defendant's Claim of Trial Court Error*

First, defendant argues that CSAAS evidence is not admissible unless it is being used to rebut a defendant's attack on the credibility of the victim, which he has placed in issue because of the victim's paradoxical behavior. Defendant is wrong.

---

[3] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

"Although inadmissible to prove that a molestation has occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation. [Citations.] [¶] Identifying a 'myth' or 'misconception' has not been interpreted as requiring the prosecution to expressly state on the record the evidence which is inconsistent with the finding of molestation. It is sufficient if the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation. [Citations.] [¶] *Admission of evidence such as CSAAS is not error merely because it was introduced as part of the prosecution's case-in-chief rather than in rebuttal.* The testimony is pertinent and admissible if an issue has been raised as to the victim's credibility." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745, italics added (*Patino*).)

During the prosecutor's case-in-chief, the prosecutor elicited testimony from A. and F. that the reasons they delayed in disclosing the molestations were because they were afraid of defendant, they did not want to lose him as their dad, defendant and their mother were still in a relationship, and they did not want their half brother to grow up without a father. Delay by a child in disclosing having been molested is, as cited in *Patino*, an example of "paradoxical behavior." (*Patino*, *supra*, 26 Cal.App.4th at pp. 1744-1745.) Accordingly, this testimony in and of itself was sufficient to support the court's admission of the CSAAS evidence.

Second, defendant's entire argument in this claim of error is the following: "[Dr.] Urquiza's CSAAS testimony was wide-ranging and covered in detail every aspect and component of the syndrome (except retraction). He testified regarding all of the CSAAS criteria, not just delayed disclosure. His testimony was not limited to rebuttal of the prosecutor's stated 'myths' regarding late, incomplete disclosure. Therefore, it violated the well-established rule that ' . . . the evidence must be targeted to a specifically identified misconception and narrowly limited to address only that misconception.' "

7

The argument neither states in his brief nor cites to the record what "wide-ranging" testimony defendant believes went beyond the agreed limitation for the CSAAS's use. It is not the task of this court to search the record to determine whether it contains support for defendant's claims. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407 ["When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited."].) Accordingly, we deem the issue forfeited.

Even if the issue was not forfeited for the foregoing reason, we would still find the issue forfeited by defendant's failure to have objected to the admission of the evidence on the ground he is now asserting on appeal, namely, that Dr. Urquiza's testimony went beyond the agreed limitation for which the CSAAS evidence could be used. " 'In accordance with [Evidence Code section 353], we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' " (*People v. Partida* (2005) 37 Cal.4th 428, 433-434 (*Partida*).) Here, defendant's failure to object to the admission of Dr. Urquiza's testimony on the ground that it went beyond the agreed-upon limitation for its use, forfeits the issue for appeal.

Third, defendant's claim that "[Dr.] Urquiza's expansive testimony," meaning evidence which exceeded the agreed-upon limitation for the evidence's use, "mirror[ed] in many aspects the facts of the instant case," thereby allowing the jury to conclude that it was A. and F. to whom Dr. Urquiza was referring in his testimony and that they "must have been molested." Defendant cites to several instances in the record that he believes supports his position. Specifically, Dr. Urquiza's testimony that most kids are sexually abused by somebody with whom they have an ongoing relationship, that their abuser is usually someone who is substantially bigger, older, stronger, and often in a position of

8

authority over them, and that disclosure may occur when the child feels safer, as when the abuser moves away.

Again, defendant never objected to any of the cited instances on the grounds that the testimony so "mirrored" the facts of the present case that the jury would believe Dr. Urquiza was referring to A. and F., and that they had been abused. Had defendant made his concerns known to the court and prosecutor by objection at the time the testimony was being admitted, any error, if it was error, could have been corrected. Accordingly, this issue also forfeited. (*Partida*, *supra*, 37 Cal.4th at pp. 433-435.)

Fourth, defendant argues that the cumulative effect of the foregoing errors, coupled with ineffectiveness of the cautionary instruction, requires reversal. Not so. As to the foregoing "errors," since we have concluded the contentions either lack merit or have been forfeited for review, there has been no establishment of prejudice. As to the purported ineffectiveness of the cautionary instruction—the jury could use CSAAS evidence "only in deciding whether [A.'s] and [F.'s] conduct was inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony" (CALCRIM No. 1193)—defendant cites to cases where the prejudice is so great that it is naive to believe that a cautionary instruction will alleviate the prejudice. There well may be such circumstances, but the present case is not one. As noted, no degree of prejudice has been established. Accordingly, the CSAAS evidence was appropriately admitted.

## II. Victims' Acts of Dishonesty

Defendant contends the trial court "committed prejudicial error when it excluded evidence of [A.'s] and [F.'s] acts of dishonesty." We conclude there was no such error.

### A. *Background*

During defendant's cross-examination of A., defense counsel elicited from A. that she had engaged in two acts of theft. On one occasion her mother, Sarah, went to another

9

home to babysit a child and took A. and F. with her. While looking for toys to play with, A. and F. found some money and the child told them they could keep some of it, but they "just took the rest" even though they knew "it wasn't [theirs]." After babysitting, Sarah took the girls to Target where F. tried to buy something with part of the money and Sarah asked F. where she had gotten it. F. lied and said she had gotten the money from their grandmother; Sarah called the grandmother, the grandmother denied having given F. the money, and A. and F. got in trouble. When defendant heard about the incident, he yelled at the girls.

Another time, when A. and F. were in first or second grade, they were caught stealing gift cards at Walgreens. Sarah took the girls to "the jail" where officers told them that if they continued to steal they would end up in jail. Again, when defendant heard about the theft he became angry.

As to a third incident, defense counsel asked A. if she remembered having gotten into trouble for "taking her teacher's keys," and the prosecutor objected on Evidence Code section 352 grounds. After an off-the-record discussion at the bench, the trial court sustained the objection. The court later explained that it had sustained the objection because "there was some speculation the keys may have been to a car, but there was no certainty involving the victim's teacher."

The following morning, defense counsel informed the court that she also wanted to cross-examine F. on the babysitting and Walgreens' thefts because the thefts, coupled with defendant's anger at the girls for stealing, showed both dishonesty and a motive for the girls to accuse defendant of the molestations. The court ruled it would not permit the questioning as to either F. or Sarah because the evidence had very little probative value, A. had already admitted to the thefts by both herself and F., the girls were only nine years

old when the thefts were committed, and admission of the evidence constituted an "undue consumption of time and confus[ion on] the issues" as well as being cumulative.[4]

## B. *Evidence Code Section 352*

Defendant argues the court abused its discretion in excluding the requested cross-examinations because each instance was one of dishonesty, and dishonesty is relevant to credibility. There was no abuse of discretion.

"A trial court's Evidence Code section 352 ruling is reviewed for abuse of discretion and will ' "not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116.)

There is no dispute that the dishonest conduct of A. and F. was relevant to their credibility as witnesses. But that misses the point. "A trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Scott* (2011) 52 Cal.4th 452, 490.)

Here, A.'s admission that she and F. had engaged in the babysitting and Walgreens' thefts was unchallenged. We, like the trial court, are unable to see what additional probative value could be gained by F.'s admissions of the thefts and by Sarah's knowledge of them. As to the alleged theft of keys, even if A. did wrongfully take them, such evidence would simply constitute another example that sometimes young children take things that do not belong to them. Accordingly, the court did not abuse its discretion in prohibiting the cross-examination under Evidence Code section 352.

---

[4] Defense counsel also sought to cross-examine Sarah about the Walgreens' theft because Sarah had testified that "the girls were good." The trial court denied the request "for the reasons the Court stated earlier" (regarding the keys).

## DISPOSITION

The judgment is affirmed.


                                               _____BUTZ_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____HOCH_____, J.

12