Filed 11/2/21 M.M. v. R.B. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| M.M.,<br><br>     Petitioner and Appellant,<br><br>v.<br><br>R.B.,<br><br>     Respondent. | A161934<br><br>(Alameda County Super.<br>Ct. No. RF04168743)<br><br>**ORDER MODIFYING OPINION** |

**BY THE COURT:**

The opinion filed herein on October 18, 2021, is modified as follows.

On page 1, the first sentence in the first full paragraph is modified to read:

For some 16 years M.M. has been involved in disputes with R.B. involving various issues regarding their son A.M., who was born in 2003—and who turned 18 years old in October 2021.

This modification does not effect a change in the judgment.

Date: 11/2/21 _____

Kline, P.J.

Filed 10/18/21  M.M. v. R.B. CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| M.M.,<br>Petitioner and Appellant,<br>v.<br>R.B.,<br>Respondent. | A161934<br><br>(Alameda County<br>Super. Ct. No.<br>RF04168743) |

For some 16 years M.M. has been involved in a dispute with his ex-wife R.B. involving their son A.M., who was born in 2003—and who turned 18 years old in October 2021.  The most recent hearing was, as described by the trial court, a request by M.M. "to modify the custody and timeshare for" A.M. and for "reconsideration of a previous order from another judicial officer." Following a long-cause hearing at which M.M. presented six witnesses, the trial court filed a comprehensive statement of decision rejecting M.M.'s request.  We affirm.

## BACKGROUND

### The General Setting

This case dates back to 2004, when M.M. "filed a petition to establish a parental relationship with A.M., who was born in 2003 to [M.M.] and

1

respondent" R.B.[1]  The dispute has involved custody but, we learn from M.M.'s brief, he also has been fighting a "no contact" order imposed (apparently in 2015) that prevented him from contacting A.M., though allowed A.M. to contact him.

The most recent hearing began in October 2019, and ended October 2020, a hiatus based in part on court-based issues related to the COVID-19 pandemic.  The hearing was held before the Honorable Jennifer Madden, to whom the matter had been assigned in 2018.  On June 12, 2021, Judge Madden issued her findings and order after hearing, attached to which was her statement of decision, a thoughtful and sensitive decision ruling against M.M.  It is a model statement, and we discuss it at length.

**The Statement of Decision**

The statement of decision begins with Judge Madden's description of what was before her, a request by M.M.—identified in the statement as "petitioner," a term we sometimes use here when quoting the statement—"to modify the custody and timeshare for the minor child, . . . and for reconsideration of a previous order from another judicial officer."  The statement then describes the sessions of the hearing, beginning with the one on October 22, 2019, and how the matter was continued to the next available court date, continued again in early 2020 as the court "closed" as a result of the Covid-19 pandemic, and continued again until Judge Madden could hear the matter on October 15, 2020, the earliest date available.  And she added, "the case was heard after [she] was re-assigned to a different division and no longer heard a standard Family Law calendar," and that she "further explained to all parties that in lieu of declaring a mistrial, the Court wanted

---

[1] R.B. has not filed a respondent's brief.

to hear the balance of the evidence but the Court would not have additional sessions available after October 15, 2020."

And, as to this, she added the following: "There was some pushback from the petitioner throughout the hearing about the time limitation imposed by the Court. The Court was perplexed, as the first session was comprised entirely of the petitioner's evidence. The second scheduled session did not occur because the Court granted petitioner's request for a continuance. The Court had no control over emergency orders or a very abbreviated schedule that did not allow the parties to have more than two sessions to complete the hearing. Even after the petitioner was allowed to call three additional witnesses in October of 2020, he protested. The Court was required to do a clear cut-off and turn to minor's counsel, C.H., and the respondent to present evidence. A clear review of the minutes will confirm that the petitioner was given the majority of the time to address his concerns in this proceeding."

Judge Madden then set forth the "Background," which included the following: "The record on the case is extensive and dates to 2004 when the petitioner filed a petition to establish a parental relationship with [A.M.], who was born in 2003 to him and respondent [R.B.] Over the years, many motions were filed and there was consistently significant tension between the parties and an inability for the parties to effectively co-parent. [¶] Within the past five years a custody evaluation was completed and the case was overseen by a number of judicial officers. Prior to that period, other custody evaluations were completed and psychological testing was done. This Court first met the parties in 2018, following the petitioner's request for reconsideration and modification of the current custody and visitation orders. Following the filing of that request, the Court sent the parties to mediation and the matter was heard on October 15, 2018. The Court heard from both

3

parties, minor's counsel and considered a mediation report by Family Court Services [(FCS)], as mentioned within.  The Court denied the motion for reconsideration and set the case for a long-cause hearing."

Section II of the statement was a lengthy exposition of the "Evidence Presented," and began with several pages discussing M.M.'s testimony and that from his five witnesses:  R.B.; child evaluator K.S. (who evaluated A.M. in 2011–2012 and again in 2016); S.C., M.M.'s brother-in-law; FCS mediator S.H.; and Dr. H., A.M.'s prior therapist.

Judge Madden then described R.B.'s testimony, included among which were her denials that she prevented A.M. from seeing his father or played any role in alienating him from his father.  Finally, Judge Madden noted that "[A.M.'s] counsel engaged in examining witnesses but did not put forth any independent witnesses or exhibits.  [Counsel] did articulate the wishes of the minor child, as she has done throughout the years of her thorough representation.  She concurred with the request of the [R.B] for the Court to not make a finding of parental alienation caused by the [R.B.] and to maintain the current orders based on the best interest of [A.M.] . . ."

Section III of the statement was Judge Madden's "Analysis."  It began with reference to Family Code[2] section 3020, subdivision (a) and section 3011, which set forth the five considerations in assessing custody and timeshare issues:

"a)  The health, safety, and welfare of the child;

"b)  The history of child abuse including the history of abuse of the other parent or abuse of another with whom the parent has a significant relationship;

"c)  The nature and amount of contact with both parents;

---

[2] All undesignated statutory references are to the Family Code.

4

"d)  Concerns about habitual or continued use of illegal substances, alcohol or prescription medication; [and]

"e)  If any allegations of (b) or (d) are present and the Court makes an award of joint or sole custody to the parent for whom the allegations are made, the Court shall detail the reasoning in writing or on the record."

Then, Judge Madden continued, "Cases of this nature present many complexities and issues for the Court to recognize and shift [*sic*] through. Since [A.M.] was an infant, his parents have been entangled in litigation. There have rarely been times of calm and peace between the parties. Numerous judicial officers have touched this case and have made attempts to make orders that would ultimately bring a sense of peace to the situation while considering the best interest of the child.  [A.M.] has been in reunification therapy with his father multiple times, individual therapy at different points in the last ten years and has had supervised visitation with his father.  After all of these efforts were exhausted, [A.M.] still resists having a relationship with his father.  He has explained this to many adults including evaluators, his therapist and his counsel, who has a longstanding and positive relationship with [A.M.]  The petitioner is essentially asking this Court to ignore the desires of a young man who is less than a year away from adulthood and who should have some level of agency in this decision, as emphasized by S.H. in his testimony.  Family Code section 3042[, subdivision] (a) takes into consideration the wishes of a minor child over the age of 14.  While [A.M.] did not testify in the case, he is represented by counsel who repeatedly made it clear that [A.M.] is happy with the current arrangement and does not seek a modification.  The Court gives his wishes due weight and consideration.

5

"This Court understands that both law and policy favor fostering an ongoing relationship between parent and child. The Court has considered the policy of the State of California that parents should share in the decision making, rights and responsibilities of child rearing unless otherwise indicated. The reasoning for this is extensive but at the heart of the matter is that a child thrives while benefitting from relationships with both parents, so long as those relationships are not damaging or threaten the welfare of the minor child.

"The petitioner portrays the respondent as a mother who consistently makes derogatory comments about the petitioner and who puts up barriers to [A.M.] having a healthy relationship with his father. He appears to be deeply embedded in this belief, despite a lack of evidence supporting this position. He presented an outdated child custody evaluation and the testimony of K.S. as evidence that an expert in fact sided with his point of view and recommended that joint legal and joint physical custody was an appropriate order. The Court considered this testimony along with the evaluation itself. While the Court does not discount the child custody evaluation that was performed, even K.S. admitted that it was outdated along with many of the tests that supported her recommendations at the time the evaluations was submitted."

Judge Madden then discussed for three paragraphs how she was "perplexed" by one of the exhibits M.M. offered, among other reasons because the exhibit reflected the evaluator's "dismissal of the physical abuse allegations that [A.M.] made against his father."

Following that, Judge Madden went on with the last portion of her analysis, a thoughtful, sensitive—and compassionate— explanation of how she reached her decision, and we quote it in its entirety:

6

"In evaluating the factors in Family Code section 3011, the Court finds that the health, safety, and welfare of the minor child is safeguarded by maintaining the current Orders. The petitioner has not demonstrated the ability to understand the minor's point of view and lacks empathy when it comes to [A.M.'s] current needs. While the Court understands that it may be painful to feel the sting of rejection from a child, rather than try to understand [A.M.'s] needs, the petitioner points fingers and harshly accuses the respondent of orchestrating this rejection.

"Abuse allegations have been made in the past and may be considered by this Court under specified circumstances. This Court did not hear direct evidence from [A.M.] or any party or agency outlined in [former] Family Code section 3011[, subdivision] (b)(1)(2) regarding abuse and is not making any findings as to whether abuse occurred between the petitioner and [A.M.] in the past. The Court cannot and will not ignore that allegations were made by [A.M.] and that may or may not affect his ability or willingness to continue with therapy and visits. Past therapy was not successful and there has been no current evidence presented in this hearing that the respondent was the cause of the therapy being unsuccessful. In contrast, the Court finds that the respondent has been supportive of their son having a relationship with his father. While she can be encouraging, the Court does not find it in the best interest of [A.M.] to force any interaction with his father. There was no evidence presented about the overconsumption of alcohol or the use of any other substance that the Court should consider in addressing the petitioner's request pursuant to [former] Family Code section 3011[, subdivision] (d).

"The Court gives some weight to the wishes of the minor child, who is now less than 10 months away from being an adult. As everyone can agree, this case is complex and has been extensively litigated for over 15 years. The

7

Court would be remiss if the desires of the child were not incorporated into the decision that this Court undertakes. While the petitioner may argue that [A.M.'s] opinion should have slight weight based on his perception of parental alienation, this Court is not going to ignore his wishes. While he did not personally testify, his wishes were made abundantly clear via his legal representation. The Court finds that he has the capacity to express his opinion to his counsel, who has represented him for years in a positive and supportive fashion. [A.M.] is in a stable home setting and does not want to engage further in any type of therapy. Despite the desire for healthy relationships between children and their parents, it can reach a point where further forced interaction will be harmful. In this case, the Court finds that to be the case."

Judge Madden then set forth her "Conclusion": "The Court reviewed all admitted exhibits, notes contemporaneously taken as testimony was given and considered all relevant aspects of Evidence Code section 780 as it pertains to witness credibility. The Court makes no findings of parental alienation by the respondent based on the presented evidence. The petitioner has not presented evidence which necessitates a change in either custody or visitation schedule as prescribed by Family Code section 3011, as stated in the above section. Therefore, the Orders remain as follows as it pertains to [A.M.]:

"1) The respondent shall maintain sole legal custody of the minor child;

"2) The respondent shall maintain sole physical custody of the minor child;

"3) The minor child shall continue to engage in therapeutic work, at his option, to explore and process feelings about his relationship with his father; [and]

8

"4)  All other Orders that do not conflict with this Order shall remain in full force and effect."

On January 21, 2021, M.M. filed his notice of appeal.

## DISCUSSION

### Summary of the Appeal

M.M.'s notice of appeal indicated it was from a judgment following a court trial.  And the case information sheet had attached to it Judge Madden's statement of decision.

On June 25, 2021, M.M. filed his opening brief, a brief that, including its appendices, is 53 pages long.  The "statement of the case" lists five "issues," the first of which refers to a ruling in June 2015, and the last of which refers to the long-cause hearing described above.  The three other "issues" refer to a June 2017 hearing (issue two); a ruling following a June 2017 hearing (issue three); and a ruling that denied M.M.'s right to have facts admitted (issue four).  Assuming without deciding that the first three issues are appealable, the time to appeal them is long past, and nothing more need be said about them.  And as to issue four, the issue involving requests for admissions, on June 11, 2020, we filed our unpublished opinion dismissing M.M.'s attempt to appeal the ruling, as it was from a non-appealable discovery order.

In short, we will direct our analysis to the last issue which appears to be the focus of M.M.'s brief—and conclude the "issue" has no merit.

### The Appeal Has no Merit:  M.M. Has Demonstrated no Error and no Abuse of Discretion

### Introduction

We begin by noting that M.M.'s brief is hardly a model of appellate advocacy.  Its 30 pages (exclusive of appendices) begin with five pages of "Statutory Authorities," various statutes set forth verbatim.  There follows

some two pages of "Case Authorities," cases listed with M.M.'s claimed distillation of their holdings, with no reference to how they apply here. This is followed by the "Statement of the Case," listing the five issues referred to above, and then the "Statement of Facts," setting forth for some 10 pages M.M.'s claimed description of the proceedings underlying the five issues.

As pertinent here, this is how M.M. describes what he calls "Issue Five: Issues of Duress at Trial on October 15, 2020." The description begins as follows: "With regard for the right of a party to present witnesses and evidence consistent with Family Code [section] 217, the Court caused duress for [M.M.], and demonstrated bias against his witnesses and testimony in a manner that had a material negative effect on [M.M.'s] carefully planned and properly noticed case presentation." From there, M.M. goes on to quote various statements attributed to Judge Madden, and then adds this: "The Court continued to countenance displeasure and objection at the prospect of [M.M.] calling his expert, instructing that [M.M.] should have called his witness in a different order. [Citation.] Note that the Court delayed progress in the hearing for 15 minutes [citation] by repeatedly insisting that [M.M.] eliminate his expert from testifying." And from there, M.M. refers to a comment by Judge Madden supposedly critical of M.M.'s conduct vis-à-vis A.M. in earlier proceedings, claiming the statement was "false," adding this: "This damaging and mistaken bias further illustrates the enthusiasm for committing bias against [M.M.] that has been a pattern in these proceedings. [¶] Despite the Court's refusal to lift what is claimed to be a valid no contact order, the bench officer commented [citation]: 'I understand that any mental health professional would not be okay with this passage of time without any kind of contact.' The disconnect between this acknowledgement by the Court, and its subsequent refusal to lift the no contact order points to a conclusion

10

that the Court relied on other science that was neither presented in the proceedings or mentioned in the statement of decision issued by the Court after the hearing of October 15, 2020 [citation]. [¶] Throughout the recent proceedings in this matter from 2017 forward, [M.M.] has repeatedly informed the Court that the no contact order is not valid, and the Court has repeatedly, consistently denied this fact [citation]. The Court stated that it had reviewed the order at issue of June 30, 2015, which order makes no statement about 'no contact' between [M.M.] and the minor child."

Finally, M.M.'s brief gets to its "argument," some five and one-half pages. There is no actual argument set forth, but rather a lengthy discussion that begins with reference to section 3020, subdivision (b), which sets forth the "public policy of this state to ensure that children have frequent and continuing contact with both parents" and, in M.M.'s words, "qualifies the statement further: '. . . except when the contact would not be in the best interests of the child.'" After citation to section 3020, subdivision (b), M.M.'s argument asserts that "This custody matter was originally filed by [M.M.] in 2004 precisely for the purpose of ensuring that the minor child enjoyed such a relationship with both parents. There are no valid reasons why frequent and continuing contact should not be ensured in this matter."

From there, M.M. goes on with a lengthy recitation of his version of what he claims occurred beginning in 2015, and how it came to be, asserting along the way that "[t]he fairness of the proceedings has been subverted in numerous, material ways since the allegations of abuse were made in 2015. Continuity in judicial decision-making has been interrupted irretrievably by multiple judicial reassignments, including during the pendency of an action, which is contravened by the California Rules of Court Family Court Standard 5.30(b)."

11

M.M. goes on to criticize various judicial officers; makes an ad hominem attack on the commissioner who presided over a 2017 hearing (including referring to M.M.'s letter of complaint about the commissioner); and finally reaches 2018, when the "proceedings were once again reassigned . . . this time to Judge Madden," as to which M.M. asserts, "From the inception of this judicial officer's tenure, minor's counsel became adamant that the Court should uphold the child's wish to have no contact with father, and the Court maintained orders consistent with this wish despite the fact that a valid no contact order did not exist. Although [M.M.] has always been respectful in the court proceedings, this Court's disposition toward [M.M.] became disrespectful from the outset of the latest judicial appointment."

And from there, M.M. goes on in argumentative fashion to cite what he claims to have done in preparation for the hearing; his complaints about "repeated continuances"; and finally ends with this: "The hearing on October 15, 2020, was conducted in a very stressful setting for all involved. The Bluejeans remote session was inaudible to different parties—and the Court—at multiple junctures in the proceedings. Judge Madden indicated that she ' . . . was not even in Family Law anymore . . .' and presided from her new assigned department. Moreover, the proceedings were not available to the public as the Court neglected to make the public feed live (Appendix A, p. 51), and this complicated [M.M.'s] ability to share the proceedings with his legal and social service resources assisting with the case. The Court repeatedly attempted to deprive [M.M.] of the opportunity to present his witnesses, and this resulted in pressure on the parties to truncate both examination and closing arguments."

And M.M. concludes as to "**Issue Five:** The conduct of the Court at [the] hearing on October 15, 2020, demonstrated a bias against [M.M.], and

12

placed duress upon the proceedings consisting of threats for a mistrial, demands to eliminate witnesses, and generally deny [M.M.] the opportunity to present witnesses and obtain testimony in a manner free of duress. The pattern of conduct cited by [M.M.] concludes that the trial was not conducted in a fair and unbiased manner, and the findings and orders therefrom must be reversed."

We read the record differently. Very differently. Judge Madden's handling of the case was exemplary, and her statement of decision comported with the Family Code in every way. And M.M.'s conclusory—and unsupported—attempt to argue the contrary is unavailing for several reasons, beginning with the principles of appellate review.

The Supreme Court has recently collected the applicable principles in *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609: "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 . . . ; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [citing cases].) 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (9 Witkin, *supra*, § 355, at p. 409, see Cal. Const., art. VI, § 13.) 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)"

13

Not only is it M.M.'s burden to demonstrate error (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 564; see *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573), to do so he must "present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. . . . [C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) M.M.'s conclusory assertions here are manifestly insufficient under these principles. Likewise does his argument fail under the standard of review.

M.M.'s brief does not set forth what he claims is the standard of review, a critical part of any appeal. As one Court of Appeal has put it, "Failure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.)

The standard of review of child custody and visitation orders is abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; see *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.) Abuse of discretion has been described in terms of a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or one that is arbitrary, capricious, patently absurd, or even whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 [" ' "arbitrary, capricious, or patently absurd" ' "]; *People v. Benavides* (2005) 35 Cal.4th 69, 88 [ruling "falls 'outside the bounds of reason' "].) In its most recent observation on the subject, our Supreme Court said that "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) This hardly describes Judge Madden's statement here.

14

We add one final note: to the extent M.M. is appealing Judge Madden's ruling insofar as it deals with custody issues, the appeal would be moot in light of the fact that A.M. turned 18 in October 2021, and would no longer be subject to the jurisdiction of the court whose jurisdiction extends only to the parties' minor children. (§ 2010, subd. (b).) In other words, the court lacks subject matter jurisdiction with regard to a child who has reached the age of majority. (See §§ 6500, 6501; *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 594.)

## DISPOSITION

The order is affirmed.

15

_____

Richman, J.

We concur:

_____

Kline, P. J.

_____

Miller, J.

*M.M. v. R.B.* (A161934)