Filed 3/24/25  In re B.T. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re B.T. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083839 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J291595, J291596) |
| v. | OPINION |
| P.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant, P.F.-B., the maternal grandmother (MGM) of B.T. and Bo.T., appeals the juvenile court's order removing the children from her care. We find no error and affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The children came to the attention of plaintiff and respondent, the San Bernardino County Child and Family Services (CFS) in December 2021, due to concerns about domestic violence between the parents (who are not parties to this appeal). MGM told an investigating social worker that, although the parents argued and had "normal relationship issues," she had "never been concerned about domestic violence" between the parents. The social worker had learned, however, that a police report stated that MGM called the police in May 2020 due to a domestic violence incident between the parents, but MGM denied that she ever called the police. MGM also denied knowing who the biological father of the children was.

CFS ruled out MGM for placement of the children "due to her lack of protective capacity for the children and her deception" of CFS. CFS did not believe MGM's statements that the parents had not engaged in domestic violence, she had never called the police to report domestic violence between them, and she did not know who the children's biological father was. CFS also was concerned that, even though MGM had

2

called the police, she "never attempted to get guardianship of the children, never called CFS, and when questioned about the concerns, minimized the domestic violence in favor of the mother." Because the children were not placed with her, MGM applied to be a resource parent through a foster family agency (FFA).

CFS later filed a petition on the children's behalf under Welfare & Institutions Code section[1] 300, subdivision (b), alleging that the parents' domestic violence and substance abuse placed the children at risk. The juvenile court sustained the petition and ordered the children removed from the parents' care, although they were eventually returned to the parents' care.

However, due to the father's arrest, the children were detained and placed in MGM's "FFA home" in January 2024. CFS then requested an emergency home clearance for MGM, which led to CFS discovering 12 domestic violence referrals involving MGM and her then-husband between 2005 and 2015, which CFS had overlooked. When reviewing MGM's home study that the FFA performed, CFS noted that MGM did not disclose any Child Welfare Services/Case Management System history although she had her own history with CFS.[2] MGM nonetheless denied any domestic violence history and minimized the reasons she separated from her ex-husband, stating

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

[2] This is a statewide case information system used by child welfare services agencies to manage their cases and provide statewide access to information about children receiving services. (See §§ 16501.5-16501.7.)

that it was due to his "'drinking and his lifestyle choices'" instead of his serious domestic violence. MGM's failure to disclose these issues concerned CFS because FFA applicants are told to be forthcoming about any relevant criminal or CFS history since FFAs do not have access to this information. CFS thus obtained a detention warrant and removed the children from MGM's care.

In February 2024, CFS filed a section 387 supplemental petition to change the children's placement from MGM's home to foster care. CFS alleged that placement with MGM was "no longer appropriate as [MGM] has demonstrated a lack of good moral character and a lack of protective capacity, in that, she was aware of the concerns of domestic violence between the parents at the initial removal [in December 2021], and did not act on them or report them and was not forthcoming in her FFA home study, denying her own CFS history that included Domestic Violence in her home," which placed the children at risk.

In March 2024, CFS asked MGM about the petition's allegations, and she said some were true while others were false. She took accountability for not reporting concerns about the parents to CFS sooner because "she should have been more protective of her grandchildren." Although she claimed she did not know of the extent of the domestic violence between the parents or their substance abuse issues, she acknowledged that she called the police when the parents were fighting and the mother broke the father's car windows. MGM also acknowledged "there are numerous police reports and

CFS history" concerning her ex-husband's domestic violence because she repeatedly called the police to report him.

In May 2024, CFS filed an addendum report recommending that the children remain in foster care and not return to MGM's care, even though she and the children had a strong bond, because CFS remained concerned about MGM's contradicting statements, which she chalked up to a language barrier/translation issue; her "ongoing evasive behavior" with CFS and misrepresentations to the FFA; and her minimization of her CFS history and her ex-husband's domestic violence. CFS also doubted MGM's claimed ignorance about the extent of the parents' domestic violence given how close she is to the mother and children. Because CFS had significant and ongoing concerns that MGM was not being truthful, CFS concluded that leaving the children in MGM's care put them at imminent risk.

The juvenile court sustained the section 387 petition and removed the children from MGM's care. MGM timely appealed.

### III.

### DISCUSSION

Section 387 permits a juvenile court to change a placement order when the existing placement has not been effective in protecting the child or the relative placement is no longer appropriate under the non-exhaustive list of criteria in section 361.3. (§ 387, subds. (a), (b).) "Thus, the test for granting a section 387 petition has two alternative prongs—(1) the previous disposition has not been effective, or (2) a placement with a

5

relative is not appropriate under section 361.3. If the trial court sustains the petition based on the second prong, then it is effectively denying the relative's request for placement under section 361.3. However, even if it sustains the petition based on the first prong, it is making a 'new placement,' and therefore it is required under section 361.3 to 'consider[]' the relative for placement and to evaluate the factors listed in section 361.3." (*In re K.T.* (2019) 42 Cal.App.5th 15, 20.)

These factors include "[t]he best interest of the child," "[t]he good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect," "the ability of the relative to . . . [p]rotect the child from their parents," and "[t]he safety of the relative's home." (§ 361.3, subd. (a)(1), (5), (7)(d), (8)(A).)

We review the juvenile court's findings and orders on a section 387 petition for substantial evidence. (*In re A.O.* (2004) 120 Cal.App.4th 1054, 1061.) In doing so, we do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. (*In re S.C.* (2006) 138 Cal.App.4th 396, 415.) The appellant thus bears the burden of showing there is no substantial evidence to support the court's findings and orders. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

MGM has not met that burden. During the initial removal and on subsequent occasions, MGM's statements suggested she was withholding information from the juvenile court to protect the parents. She denied any domestic violence between the

6

parents, but police records revealed that she called the police because of their domestic violence. And when asked about their domestic violence, she minimized what happened. She also denied knowing about the parents' substance abuse issues. In general, CFS did not find MGM's purported ignorance of the parents' domestic violence and substance abuse issues credible given her close relationship with the mother and the children.

MGM had other credibility issues. When MGM applied to be a FFA home, she denied having experienced domestic violence, despite having suffered extensive, serious domestic violence herself that she repeatedly reported to the police. MGM also failed to disclose CFS's resulting involvement from her calls to the police. MGM omitted this information even though she was told to be forthcoming about any relevant CFS history or domestic violence in her past.

On this record, the juvenile court could reasonably conclude that the MGM was not a credible witness and had not been forthright with the juvenile court in an effort to protect the parents. It was thus reasonable for the juvenile court to infer that the MGM could not be trusted to voluntarily disclose information to social workers or to the juvenile court in order to protect the children's interests in the future if those interests possibly conflicted with the interests of the parents. In other words, the juvenile court could reasonably find that MGM could not (or would not) protect the children from their parents or provide a safe, secure, and stable environment for the children. (§ 361.3, subd. (a)(7)(A), (D).)

As a result, substantial evidence supports the juvenile court's decision to sustain the section 387 petition and remove the children from MGM's care.

For the first time on appeal, MGM argues the juvenile court erroneously failed to consider section 16001.9, subdivision (a)(4) and (5), and section 16010.7. MGM forfeited the argument by failing to assert it below, but it fails in any event. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1293.)

Section 16001.9 outlines various rights that foster children have. Subdivision (a)(4) provides that foster children have the right "[t]o be placed in the least restrict setting possible . . . unless a court orders otherwise," and subdivision (a)(5) provides that foster children have the right "[t]o be placed with a relative or nonrelative extended family member *if an appropriate and willing individual is available*." (Italics added.) These provisions thus state that foster children have a right to be placed in a relative's home *if* the juvenile court finds that the relative's home is appropriate. The juvenile court here did not violate either subdivision because it properly found that placing the children with MGM was not appropriate.

MGM contends that section 16010.7 "requires that significant efforts be put into preserving placement, especially with a relative." MGM is correct that section 16010.7 outlines the "placement preservation strategy" procedures that a social services agency usually must follow before changing a foster youth's placement. (See generally § 16010.7, subdivisions (b)-(c), (e).) MGM is also correct that the procedures are in place to prevent a foster child's "unnecessary or abrupt" change in placement. (*Id*., subd.

(a).)  The agency need not develop a placement preservation strategy, however, "[i]f it is determined that remaining in the existing foster care placement or providing prior written notice of that foster care placement change poses an imminent risk to the health or safety of the child."  (§ 16010.7, subd. (h).)  Because CFS concluded leaving the children in MGM's care put them at imminent risk, CFS had no obligation under section 16010.7 to employ a placement preservation strategy to maintain their placement with MGM.

IV.

DISPOSITION

The juvenile court's order granting CFS's section 387 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

MILLER
        Acting P. J.

MENETREZ
        J.