Filed 7/9/25  In re Z.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re Z.H. et al., Minors. | C102766 |
| A.H.,<br><br>       Petitioner and Respondent,<br><br>   v.<br><br>B.B.,<br><br>       Objector and Appellant. | (Super. Ct. No. SDR0065725) |

B.B. (father) appeals from the trial court's judgment terminating his parental rights over his two minor children.  (Fam. Code,[1] §§ 7822, 7894.)  Father claims the trial court erred when it found that he intended to abandon the minors.  We will affirm the trial court's judgment.

---

[1]     Further undesignated statutory references are to the Family Code.

1

## BACKGROUND

Father and A.H. (mother) began an intimate relationship in late 2017, during which time they became the parents of minors Z.H. and G.H. (the minors). Both parents reported significant dysfunction in the home. Their relationship ended in late 2020 due to infidelity, but mother allowed father to remain in the home. Father was eventually removed from the home in early 2022. The parents have different opinions about what precipitated that removal. According to mother, in May 2022, minor Z.H. (then approximately three years old) began making statements about, and exhibiting signs of, having been sexually abused. Z.H. experienced significant distress when in father's presence, and she ultimately identified father as the perpetrator of the abuse.

According to father, Z.H. was exhibiting signs of abuse but it was the parents' roommate, T.A. (the roommate), whom she implicated as the perpetrator. Father reported that Z.H. made allegations against the roommate in front of father and mother and to multiple members of father's extended family. Father directed mother to have Z.H. examined by a doctor but an argument ensued, and mother accused him of sexually abusing Z.H. It was father's belief that mother was coaching Z.H. to identify him as the perpetrator and alienate him from Z.H.

Father initially had supervised visits with both minors. However, in July 2022, during the second visit, Z.H. asked father whether he remembered "touching her privates." Thereafter, visitation between father and Z.H. was terminated.

Child Welfare Services (CWS) conducted an investigation. Father took offense to the way in which CWS was treating him and refused to participate. He expressed his frustration with CWS saying, "I don't have my kids because I didn't jump through [CWS's] hoops. They want everyone to bow down to them and maybe I would have if I thought my kids were unsafe, but they were treating me so unprofessionally and horribly I just couldn't take it. I get they are my kids and I should have fought harder but I didn't do anything wrong . . . I absolutely believe my daughter has been coached."

In April 2023, the trial court terminated father's visits with Z.H. and ordered him to participate in once monthly professionally supervised visits with G.H. at father's expense. But father claimed he could not afford the visits and thereafter did not schedule visits or see G.H.

*Mother's Petition*

On April 3, 2024, mother filed a petition to free the minors from father's custody and control pursuant to sections 7822, 7823, 7824, and 7825. As relevant here, mother alleged father left the minors in her custody for at least one year without any plan for their support, or without communication from him, with an intent to abandon them. (§ 7822.) She argued father's intent to abandon was evidenced by the fact that father never tried to participate in court-ordered monthly supervised visits with G.H., and his sexually inappropriate conduct toward Z.H. resulted in a court order prohibiting him from visiting Z.H. Mother argued the minors would not be safe with father based on father's alleged sexual abuse of Z.H., his substance abuse, his failure to participate in court-ordered visits with G.H., and his failure to financially support the minors.

*Investigative Report*

According to the July 11, 2024, investigative report prepared for the hearing on mother's petition, father denied reports that he never financially supported the minors and claimed he paid child support when he was employed. He also claimed he brought gifts and necessities for the minors when he visited them, and he sent them cards, letters, and presents when permitted. Father explained that he " 'went into a downward spiral' " and began to abuse illegal substances following the sexual abuse allegations against him. As a result, he was arrested and incarcerated for drug and weapons possession, which prevented him from financially supporting the minors. He claimed his incarcerated status also prevented him from petitioning for visitation with Z.H. or exercising his right to visit G.H. The report stated that, by June 27, 2024, father had been sober for six months and

3

was residing at a sober living home. He was employed and expressed a strong desire to reestablish contact and reunite with the minors.

The investigative report noted mother denied coaching or manipulating Z.H. into identifying father as her sexual abuser. Mother provided the investigator with documentation supporting her assertions that Z.H. had been sexually abused and became distressed and " 'shut[] down' " when father visited. The report noted that while Z.H.'s sexual abuse had been substantiated by CWS, no criminal charges had ever been filed.

The investigator concluded the conditions necessary to free the minors from father's parental custody and control had been met pursuant to sections 7822 and 7823 (but not sections 7824 and 7825) and recommended the court grant mother's petition.

*Hearing on Mother's Petition*

The hearing on mother's petition commenced on October 23, 2024.[2] Mother, acting in propria persona, testified Z.H. said father had been touching her inappropriately, and that Z.H. had made similar accusations about the roommate. Mother did not know if the roommate was innocent, but she was certain father was not after witnessing Z.H. tell father, "Daddy, I told mommy I touched your privates." The first time Z.H. had a visit with father, Z.H. vomited into a trash can, and the visit was terminated. At the second visit, Z.H. (then two years old) asked father, "Do you remember touching my privates?" Father responded, "No, sweetie, I do not." Z.H. continued to implicate father in the sexual abuse until CWS halted father's visitation with Z.H. in July 2022, deeming it detrimental to her health.

Mother testified she never coached Z.H. to make the sexual abuse allegations against father, noting Z.H. made the same allegations to others when mother was not present. According to mother, Z.H.'s preschool therapy reports showed Z.H. disclosed

---

[2]    At the time of the hearing, Z.H. was five years old and G.H. was three years old.

inappropriate touching by father, using father's first name when identifying the perpetrator.

Mother further testified that father was given monthly supervised visits with G.H. but father "chose" to stop visiting G.H., who was a year old at the time. Mother testified G.H. was now almost four years old and "doesn't have any clue who [father] is. [Father] abandoned him completely. [Father] abandoned both children over a year, financially." Mother testified she was seeking termination of father's parental rights for the minors' safety and well-being due to their young ages and his unsafe conduct, substance abuse, and unwillingness to comply with court orders. She stated it would not be beneficial to reintroduce the minors into a relationship with father when they had no current relationship with him.

Maternal grandfather testified Z.H. told him, "[father] showed me his privates." Maternal grandmother, mother's sister-in-law C.C.,[3] and C.C.'s husband M.E. all testified Z.H. told them father made her "touch his privates" or "touch him there [pointing to his groin]."

Father's cousin L.L. testified that in 2003 when L.L. was six years old and father was approximately 16 years old, father sexually abused him by exposing himself, orally copulating L.L., and attempting to anally penetrate L.L., and having L.L. do the same to father.

Paternal great-grandmother and paternal great-aunt both testified father never asked them for financial help in order to see G.H.

Father testified that, in May 2022, Z.H. told several paternal relatives that she had "seen [the roommate's] privates" and "[the roommate] had touched her privates." Father's family told father and mother what Z.H. said, and mother in turn told the

---

**3** To protect their privacy, we refer to the witnesses by their initials. (Cal. Rules of Court, rule 8.90(b)(10) & (11).)

roommate. However, after father returned from working out of town for two weeks and spending one week in the hospital, mother told him he could not return to the house or he would go to jail because the roommate said Z.H. told him father "touched her." Father instructed mother to take Z.H. to the hospital to be examined, telling her, "[CWS] is going to get involved, so are the cops. I don't care. I want to make sure my daughter is okay." Father testified that mother allowed the roommate to watch the minors in his absence despite his admonishing her not to do so.

Father testified he was unable to attend monthly visits with G.H. because he "didn't jump through [CWS's] hoops, and they didn't like that," and he could not afford to pay for supervised visits because he was unemployed. When asked whether he financially supported the minors, father testified he bought them gifts for birthdays and holidays. He did not pay child support while he was incarcerated for several periods totaling nearly six months between 2023 and 2024, but he got a job after his release in May 2024 and had been paying child support ever since. He claimed he had no way of financially supporting the minors for more than a year after he was removed from the home because mother blocked him from contacting her and he had no way of reaching her. Father testified he had been sober for 10 months, he was living at a sober living house, and he had nearly completed his outpatient substance abuse treatment classes.

*Court's Ruling on Mother's Petition*

On October 24, 2024, the trial court granted mother's petition under section 7822, finding clear and convincing evidence that father left the minors in the care and custody of mother for a period of over one year without any support or communication from father, and that father's intent was to abandon the minors. The court also found it was in the minors' best interests to grant mother's petition. The court issued a judgment that the minors were free from the custody and control of father.

6

Father contends there was insufficient evidence to support the trial court's order terminating his parental rights pursuant to section 7822 because he did not leave the minors with the intent to abandon them.

Section 7822 provides that a proceeding to free a child from parental custody and control due to abandonment may be brought if, among other things, "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) We review a trial court's findings under section 7822 for substantial evidence. (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010 (*Allison C.*).)

"Abandonment and intent ' "are questions of fact for the trial judge . . . . His decision, when supported by substantial evidence, is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment [citations].' " [Citation.] 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' " (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1011.)

Here, as a preliminary matter, father fails to cite to the record in support of his claim. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Otherwise, " 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*Ibid.*) In any event, we exercise our discretion to reach the claim raised by father.

First, we consider whether father voluntarily left the custody and care of the minors to mother for a period of one year. (§ 7822, subd. (a)(3).) Substantial evidence supports a finding that he did. Father was removed from the home in May 2022 and was

provided with supervised visits with both minors. In July 2022, his visits with Z.H. were halted as a result of Z.H.'s continued implication of him as the perpetrator of sexual abuse against her. Although it is not clear from the record, it appears that, as of the October 2024 hearing on mother's petition, father had not had any contact with Z.H. since April 2023, and possibly as early as July 2022 when his visits with Z.H. were halted. In April 2023, the trial court had ordered father to participate in once monthly visits with G.H., to be professionally supervised at father's expense. Father claimed he could not afford to pay for a supervisor and thereafter did not participate in the monthly visits or otherwise contact G.H.

Father argues he did not *voluntarily* leave the minors in mother's care. Rather, he contends they were with mother as a result of the court proceedings and subsequent custody order. He acknowledges that failure to take affirmative steps to reestablish contact following judicial intervention may support an inference of abandonment (see *In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 504; *In re Amy A.* (2005) 132 Cal.App.4th 63, 70 [parent's "repeated inaction in the face of the custody order provides substantial evidence that he voluntarily surrendered his parental role and thus 'left' [the child] within the meaning of § 7822"]; *In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 816 [concluding the mother "left" her child when she did not seriously attempt to obtain visitation or a change in the removal order]), but argues the court's order explicitly prohibited any contact with Z.H. and imposed financial conditions that made contact with G.H. "functionally impossible." We are not persuaded.

Father claimed he was unable to pay for a visitation supervisor. However, he provided no evidence to demonstrate, and we have found nothing in the record to suggest, that he attempted to obtain financial assistance from family members or any other source for even a single visit with G.H., or that he made any effort to have the visitation order modified. Instead, he claimed he was unable to visit G.H. because he "didn't jump

8

through [CWS's] hoops," and he refused to participate in the investigation because he was offended by CWS's alleged poor treatment of him.

As for Z.H., she identified father as the perpetrator of sexual abuse against her, although charges were never filed against him. Father was prohibited by court order from visiting Z.H. due to those allegations. That is, father "voluntarily surrendered" Z.H. to mother's care and custody by his voluntary acts of sexual misconduct. (See *Allison C.*, *supra*, 164 Cal.App.4th at pp. 1011-1012.) Then, during the more than two-year period thereafter, father's possession of controlled substances and an illegal firearm while on probation led to several periods of incarceration. Again, father left both minors in mother's care and custody by his voluntary acts of possessing illegal drugs and weapons. (*Ibid*.) In any case, " 'being incarcerated does not, in and of itself, provide a legal defense to abandonment of children.' " (*Id.* at p. 1012, quoting *In re Rose G.* (1976) 57 Cal.App.3d 406, 424.) Father told the investigator he was prevented from petitioning the court for visitation with Z.H. while he was incarcerated, but he provided no evidence or authority for that claim. Even assuming that was true, father made no attempt during periods when he was not in custody to petition for modification of the visitation order or obtain financial assistance from those in his support network. Thus, the court did not err in finding father left the minors in mother's care and custody without communication for more than one year.

Next, we consider whether there is sufficient evidence to support the trial court's finding that father failed to provide support for the minors. (§ 7822, subd. (a)(3).) The answer to that question is yes. Here, father claimed he paid child support *when he was employed*, brought gifts and necessities to visits (before his visits ended), and sent cards, letters, and presents when permitted. Even assuming the truth of those assertions, father was either unemployed or incarcerated, or both, from the time he was removed from the family home in mid-2022 until May 2024, when he was released from custody and obtained employment. While it is true that father's ability to provide support for the

minors was limited due to his periods of incarceration, his incarceration was due to his own voluntary actions. (*Allison C.*, *supra,* 164 Cal.App.4th at pp. 1011-1012.) Similarly, the trial court was entitled to disregard father's testimony that he had no way of financially supporting the minors for more than a year after May 2022 because he had no way to contact or speak to mother. Further, the gifts father testified that he bought the minors for birthdays and holidays were merely tokens, having no impact on the burden of financially supporting the minors. The trial court's finding that father failed to support the minors is supported by substantial evidence.

Finally, we turn to the trial court's finding that father intended to abandon the minors. " 'The . . . failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent . . . ha[s] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent . . . .' (§ 7822, subd. (b).)" (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1010.) As previously discussed herein, father's efforts to support the minors were, at best, nominal gestures which contributed little or nothing to the actual care and custody of the minors. Father admitted he "should have fought harder" for his children yet he refused to participate in CWS's investigation and failed to make any effort to ensure he could visit either or both minors. That is, he never sought to take meaningful parental responsibility for the minors, as demonstrated by the fact that he left them in mother's care and custody for a period of over one year without any provision for their support, with the intent to abandon them. (§ 7822, subd. (a)(3).) The trial court's finding that father intentionally abandoned the minors is supported by substantial evidence.

We conclude the trial court did not err in terminating father's parental rights over the minors pursuant to section 7822. In light of that conclusion, we need not reach father's claim that the trial court erred in finding termination of parental rights was in the minors' best interests.

10

## DISPOSITION

The trial court's judgment is affirmed.

_____\s_____
Krause, J.

We concur:

_____\s_____
Mauro, Acting P. J.

_____\s_____
Duarte, J.