Filed 6/11/26  In re C.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| In re C.T., a Person Coming Under the Juvenile Court Law. | C104649 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>M.P.,<br>        Defendant and Appellant. | (Super. Ct. No. 24JV-32822-01) |

Appellant M.P., alleged father of the minor (alleged father), appeals from the juvenile court's denial of his Welfare and Institutions Code[1] section 388 petition for modification and orders terminating parental rights.  (§§ 366.26, 388, 395.)  Alleged father contends (1) that the juvenile court abused its discretion when it denied his petition for modification, and (2) the juvenile court and the Shasta County Health and Human Services Agency (the Agency) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).  The Agency

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

1

argues appellant's status as an alleged father deprives him of standing to raise either of his claims and further renders his appeal from the denial of his section 388 petition moot.

We will affirm the juvenile court's orders and conclude that alleged father lacks standing to raise an ICWA claim.

## BACKGROUND

In March 2024, mother T.T. (mother) gave birth to the minor at an undisclosed location. She was taken to the hospital but was uncooperative with hospital staff and the social worker. When she attempted to leave the hospital with the minor against medical advice, law enforcement was called and the minor was removed from her custody. Mother identified the minor's father as the alleged father, who had just been released from prison.[2] The social worker attempted to contact alleged father, but the phone number provided belonged to the paternal grandfather, who indicated alleged father was residing at the Good News Rescue Mission. The social worker's attempts to contact alleged father at that facility and the surrounding areas were unsuccessful.

*Dependency Petition*

On March 12, 2024, the Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g), alleging mother had mental health and substance abuse issues and unstable housing, and alleged father had substance abuse issues and unstable housing and his whereabouts were unknown. The juvenile court ordered the minor detained.

The following month, the social worker learned alleged father was in custody at the Shasta County jail. Alleged father reported he was on parole until 2027 and was homeless in Redding. He reported past drug use, but he was not interested in a substance abuse treatment program. He stated he would like to see "his daughter" in his care.

---

[2] Alleged father testified at the section 366.26 hearing that he was present when the minor was born.

2

In May 2024, the Agency reported that mother and alleged father were both incarcerated in the county jail. Referrals had been submitted on behalf of alleged father in late March 2024 for parenting classes and a drug and alcohol assessment, but he had yet to participate, and no visitation had taken place. The Agency recommended that reunification services be provided to both mother and alleged father.

On May 14, 2024, the juvenile court appointed counsel for alleged father.

*Paternity Inquiry and Order for Reunification Services*

Both mother and alleged father were present (in custody) with their respective counsel at the May 24, 2024 jurisdiction and disposition hearing. The matter was continued to allow alleged father time to review the social worker's reports with counsel. After several more continuances, the jurisdiction and disposition hearing commenced on June 28, 2024. Alleged father was present with counsel. The juvenile court sustained the petition and conducted a paternity inquiry as to alleged father. Mother testified alleged father was the minor's father, but he was not listed on the minor's birth certificate.[3] She did not know whether alleged father ever signed a voluntary declaration of paternity. Mother testified she was never married but she was living with alleged father at the time she became pregnant with the minor. She testified that alleged father was in custody when she gave birth to the minor, but he acknowledged he was the minor's father. She also testified alleged father did not submit to a DNA test. Based on mother's testimony, the court found alleged father to be an alleged father and ordered reunification services, noting services were being offered despite his status as an alleged father and further noting alleged father could "elevate his status at a later time."

By December 2024, the Agency was recommending that alleged father's (and mother's) reunification services be terminated and the matter be set for a section 366.26

---

[3] The minor's birth certificate reflected mother's name for one parent and "unk[nown]" for the other parent.

hearing. Alleged father was released from county jail on October 30, 2024, after having spent six months in custody on a second degree burglary charge. He was living at Chico Rescue Mission where he participated in church and Bible study. He was employed but working in an unpaid position. He visited the minor for the first time on November 22, 2024, and while he was fully engaged during visits, he struggled to read the minor's cues. He did not attend parent engagement, comply with random drug testing, or complete an alcohol or drug assessment while incarcerated.

*Termination of Reunification Services*

At the January 2025 six-month review hearing, the juvenile court found that the Agency provided reasonable services to alleged father but he made no progress in his case plan. The court terminated reunification services and set the matter for a section 366.26 hearing. The court advised the parties of their writ rights and instructed the juvenile court clerk to send notice of those rights to alleged father and mother at their last known addresses, as neither had attended the hearing.

*Alleged Father's Section 388 Petition*

On August 5, 2025, alleged father filed a section 388 petition to modify the juvenile court's January 2025 order terminating reunification services and finding that ICWA did not apply. Alleged father requested additional reunification services, arguing he completed his case plan goals, maintained sobriety for nine months, and missed only one visit with the minor. He also argued he did not receive reasonable services while incarcerated. He further argued that additional reunification services would be in the minor's best interest because the minor would benefit from reunification "with a now-rehabilitated parent."

*Hearing on Section 388 Petition and Section 366.26 Hearing*

The section 366.26 hearing was combined with the hearing on alleged father's section 388 petition and was commenced on September 5, 2025. After hearing testimony and argument, the juvenile court reiterated its previous finding that ICWA did not apply.

It denied father's section 388 petition, finding his circumstances were changing but not changed enough and his request for more services was not in the minor's best interest. The court ordered the parental rights of alleged father and mother terminated and identified adoption as the permanent plan. Alleged father timely appealed from these court's orders.

DISCUSSION

I

*Denial of Section 388 Petition for Modification*

Alleged father contends the juvenile court abused its discretion when it denied his section 388 petition requesting additional reunification services.[4] He asserts that he voluntarily participated in a 12-month residential substance abuse rehabilitation treatment program, maintained sobriety, and had arranged sober housing for himself and the minor—presumably as his argument that there had been a change in circumstances. He further claims it was in the minor's best interest to reunify with her "sober and rehabilitated father" (boldface and capitalization omitted). He also contends, as he did in the juvenile court, that the Agency failed to provide him with services during his six months of incarceration and after his release from custody, but he does not develop how this contention relates to his section 388 petition, as opposed to an improper and belated challenge to the court's findings and orders at the January 2025 hearing.

The Agency argues alleged father lacks standing because, as an alleged father, he never obtained legal parent status. Accordingly, he lacks a legally cognizable interest in the minor or the outcome of the dependency proceedings, and he therefore is not an aggrieved party for purposes of appellate standing. The Agency further argues alleged

---

[4] An appellate court reviews the denial of a section 388 petition for modification for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 866.)

5

father's claim is moot because this court cannot grant him any effective relief given his alleged father status.

As we explain, due to alleged father's status as an alleged father, he is not entitled to additional reunification services (or custody of the minor), and therefore, we conclude the juvenile court did not err.

Generally, there are three basic types of fathers in dependency law: presumed, biological, and alleged. (*In re A.H.* (2022) 84 Cal.App.5th 340.) A presumed father is afforded the most rights in dependency proceedings (*ibid*.), followed by a biological father, who " 'has established his paternity but has not established his qualification as a presumed parent.' " (*Id.* at p. 342.) An alleged father is just that—a man alleged to be the father, but who has not yet established either presumed father status or biological paternity. (*Ibid*.) A presumed father is afforded standing, the appointment of counsel, and reunification services, while a biological father's access to appointed counsel and services is discretionary. (*Id.* at pp. 349-350.) An alleged father "has a constitutionally protected due process right to ' "be given notice and an opportunity to appear, to assert a position, and to attempt to change [his] paternity status." ' " (*Id.* at pp. 350-351.)

The juvenile court has a continuing duty to inquire about parentage at every hearing from the very beginning of a dependency case until the question of parentage has been resolved, to take specific steps to address the issue of parentage with every person present at each hearing and with local child support authorities, and to determine parentage if no such determination has been made. (*In re A.H., supra,* 84 Cal.App.5th at p. 364, fn. omitted; see Cal. Rules of Court, rule 5.635(b).)[5]

Here, mother identified alleged father as the father of the minor. Alleged father's whereabouts were initially unknown; however, once he was located in custody, the social

---

[5] Further rule references are to the California Rules of Court.

worker provided him with notice of the proceedings and thereafter notice of all hearings. The juvenile court then appointed counsel for alleged father and, at a subsequent hearing, conducted a paternity inquiry. Based on mother's testimony and evidence, including that alleged father was not listed on the minor's birth certificate, he did not sign a voluntary declaration of paternity, he was living with mother when she became pregnant but was not married to her, he was not present when she gave birth, and he did not submit to a DNA test, the court made a finding that he was merely an alleged father.

" 'An alleged father has no rights in a dependency case other than the right to step forward and to seek to establish his paternity of the child,' " and he is " 'not entitled to custody, reunification services, or visitation.' " (*In re A.H., supra,* 84 Cal.App.5th at p. 350.) The juvenile court ordered reunification services to be provided to alleged father, noting *those services were offered to him despite his status as an alleged father* and adding that he could seek to elevate his status at a later time. We discern no evidence in the record, and alleged father has provided no evidence, that he ever took steps to elevate his status to a biological or presumed father even after he was released from custody in October 2024. He therefore remained an alleged father and, as such, had no right to additional reunification services.

Alleged father argues, without elaboration or citation to authority, that the juvenile court's discretionary order providing him with reunification services "even though he's an alleged father" necessarily elevated him from an alleged father to a presumed father thereby imbuing him with all of the accompanying rights, including the right to reunification services. "When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) We therefore reject this novel contention without further discussion.

Next, alleged father claims he is an "interested party" (see § 388) and therefore had standing to file his section 388 petition and, by extension, to appeal from the juvenile

court's denial of that petition. While we agree alleged father was an interested party and did have standing to file his section 388 petition and appeal from the denial of it, as we previously concluded, he was not entitled to additional reunification services due to his status as an alleged father and, as such, we cannot grant him any effective relief. (*In re A.H., supra,* 84 Cal.App.5th at p. 350.) Therefore, the juvenile court did not err in denying his section 388 petition.

Finally, to the extent alleged father challenges the juvenile court's finding that the Agency provided him with reasonable services, the claim is forfeited. The court made a finding at the January 21, 2025 six-month review hearing that the Agency provided alleged father with reasonable services, at which time the court terminated alleged father's services and set the matter for a section 366.26 hearing. That order was not directly appealable. A party seeking review of an order setting a section 366.26 hearing must timely file a petition for extraordinary writ in order to preserve their right to subsequent appellate review. (§ 366.26, subd. (l); rules 8.450 and 8.452.) Failure to do so "shall preclude subsequent review by appeal of the findings and orders." (§ 366.26, subd. (l)(2); *In re Hannah D.* (2017) 9 Cal.App.5th 662, 678.) Alleged father did not file a timely writ petition challenging the court's January 21, 2025 order setting the section 366.26 hearing. He is therefore precluded from contesting the court's finding regarding the reasonableness of reunification services here on appeal.

## II

### *ICWA*

Alleged father also contends the juvenile court abused its discretion when it found ICWA did not apply because the Agency failed to undertake a proper ICWA inquiry of the maternal and paternal relatives. The Agency argues alleged father lacks standing to raise an ICWA claim due to his status as an alleged father and, in any event, sufficient evidence supports the juvenile court's ICWA finding. Alleged father asserts that the

8

ICWA is based on biological paternity and, because he was "deemed to be [the minor's] only possible father" (boldface and capitalization omitted) and was provided with reunification services, the ICWA was triggered and the Agency was therefore required to comply with its inquiry and notice requirements.

As we explained *ante*, the juvenile court made a finding that appellant was merely an alleged father, and thereafter alleged father made no attempt to obtain presumed father status either during or after his period(s) of incarceration. As such, he lacks standing to challenge a violation of the ICWA inquiry and notice provisions, and we must dismiss his claim. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 709 (*Daniel M.*).) "The termination of parental rights may be challenged on the ground of lack of ICWA notice by the dependent child, a parent or Indian custodian from whose custody the child was removed, and the Indian child's tribe. (25 U.S.C. § 1914; rule 1439(n) [current rule 5.664].) The ICWA defines 'parent' as 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom.' (25 U.S.C. § 1903(9).) The ICWA expressly excludes from the definition of 'parent' an 'unwed father where paternity *has not been acknowledged or established*.' " (*Daniel M.,* at pp. 707-708, italics added.)

"[A]n alleged father may acknowledge or establish paternity by voluntarily signing a declaration of paternity at the time of the child's birth, for filing with the birth certificate (Fam. Code, § 7571, subd. (a)), or through blood testing (Fam. Code, § 7551)." (*Daniel M., supra*, 110 Cal.App.4th at pp. 708-709, fn. omitted.) Alleged father took no such actions. On this record, we cannot conclude alleged father "acknowledged or established" he was a parent within the meaning of title 25 United States Code section 1903(9). Therefore, alleged father lacks standing to challenge a violation of the ICWA inquiry and notice provisions and we must dismiss his ICWA claim. (*Daniel M.,* at p. 709.)

9

DISPOSITION

The juvenile court's orders denying alleged father's section 388 petition for modification and terminating parental rights are affirmed.

\s\
KRAUSE, Acting P. J.

We concur:

\s\
BOULWARE EURIE, J.

\s\
MESIWALA, J.

10